In the Matter of the Petition of STRAW-BERRY COMMONS APARTMENT OWNERS ASSOCIATION 1, for a New Certificate of Title After Foreclosure of Assessment Lien.

No. C4–84–138.

Court of Appeals of Minnesota.

Oct. 16, 1984.

James E. Snoxell, Henningson, Peterson & Associates, Ltd., Minneapolis, for appellant Strawberry Commons.

James R. Doran, Johnson & Doran, Columbia Heights, for respondents Heglands and Fearing.

Heard, considered, and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal from a determination by the Hennepin County Deputy Examiner of Titles that a foreclosure sale should be set aside because the sale price was grossly inadequate. Petitioner moved the district court to set aside the examiner's recommended order and issue a new certificate of title. The court affirmed the examiner's conclusions of law without comment. We affirm.

## FACTS

Marilyn Fearing owned a condominium in the Strawberry Commons Condominium Complex. In December 1979 she sold it to James and Wanda Hegland, who resold it to Fearing on a contract for deed. The Heglands are the fee owners pursuant to a warranty deed registered in January 1981. The Heglands never saw the condominium, and left all property management to Fearing. She rented it to Gary Beavens in March 1982. Fearing is a licensed real estate broker. Hegland became a licensed real estate agent after he purchased this property. Strawberry Commons is operated by a non-profit owners' association. It assesses monthly association dues and occasional special assessments to pay for maintenance. The condominium association was aware of the transactions between the Heglands and Fearing regarding ownership of the subject apartment unit. The dues for the Hegland-Fearing apartment have not been paid in full since January 1982. At that time they were $100 per month.

Beavens testified he became aware of the delinquency when notices were published in the association newsletter. He testified that he told Fearing about the delinquencies twice, and Fearing said she would pay them. Fearing testified she sent a letter to the association in August 1982, complaining about the condition of the property, and refusing to pay the dues until there was some improvement. The association denies receiving the letter.

The Declaration of Apartment Ownership includes a power of sale for assessment liens. The association filed an assessment lien on August 19, 1982, for $308.10 in arrears. While the association claimed its standard practice was to contact owners by mail prior to foreclosure, the Heglands and Fearing claim they did not receive notice, and no letter or other evidence was presented to the court.

On October 2, 1983, a deputy sheriff served a Notice of Assessment Lien Foreclosure on Beavens. The court found that Beavens informed Fearing of the notice by phone within a few days. Fearing denies receiving notice. The notice was also published for six weeks.

On November 18, 1982, the association purchased the property at the sheriff's sale for $1,200.09. An affidavit of costs for foreclosing the lien, including attorney's fees of $764.20, was on file. The day after the six-month redemption period ended, the association's attorney contacted the Heglands, who offered to pay the arrears, which then totalled $1,600. The association refused, asking $16,000 instead.

On July 26, 1983, the association petitioned the Examiner of Titles to issue a new Certificate of Title. The Heglands and Fearing appeared in response to Orders to Show Cause. The matter was referred to a deputy examiner for trial.

The Heglands argued to the deputy examiner that the sale was invalid for four reasons:

1. The attorney's fees were in excess of the amount authorized by Minn.Stat. § 582.01 (1982).

2. Failure to serve notice on respondents deprived them of due process and equal protection.

3. Inadequacy of the price, coupled with procedural irregularities, voids the sale.

4. Inadequacy of price alone renders the sale void.

The deputy examiner found that Fearing did receive notice of the sale from Beavens, but the Heglands did not receive notice until after the redemption period. The fair market value of the property was set at $50,000. There was an unpaid mortgage balance of approximately $26,000. The sale price was 5% of the net value. The deputy examiner concluded that, although the attorney's fees were in excess of the statutory limits, it did not void the sale; that the Heglands were not deprived of due process and equal protection rights; and there were no procedural irregularities to render the sale void. He did recommend the sale be set aside because "the inadequacy of price is so great as to shock the conscience of the court and to require interference of a court of equity for the fee owners."

Subsequent to the trial court's determination that the foreclosure sale be set aside, the Heglands again attempted to pay the arrears and were refused. As of January 31, 1984, $3,000 in dues remained unpaid.

### ISSUE

Whether the foreclosure sale should be set aside due to the grossly inadequate price and procedural problems.

### ANALYSIS

Condominium assessment liens containing a power of sale may be foreclosed as if they were mortgages. Minn.Stat. § 515A.3–115(a) (1982). The method used here was mortgage foreclosure by advertisement. Minn.Stat. § 580 (1982).

 The general rule is that an inadequate price alone is not enough to set aside a foreclosure sale. *Guidarelli v. Lazaretti*, 305 Minn. 551, 233 N.W.2d 890 (1975). The mortgagor normally has a remedy for a low price in his right to redeem. *G.G.C. Co. v. 1st National Bank of St. Paul*, 287 N.W.2d 378 (Minn.1979). If there are irregularities in the manner in which the sale is conducted which discourage bidding, or in some way result in an inadequate bid, the court may hold the sale invalid. *Lalor v. McCarthy*, 24 Minn. 417 (1878); *Kantack v. Kreuer*, 280 Minn. 232, 158 N.W.2d 842 (1968).

The Heglands allege two irregularities in this sale. The first is the claim for excess attorney's fees. Minn.Stat. § 515A.3–115(f) (1982) allows costs and reasonable attorney's fees for assessment lien foreclosures. Section 582.01 (1982) limits attorney's fees for foreclosures by advertisement to $150, when the original principal amount was less than $5,000. An affidavit of costs and attorney's fees must be filed within ten days of the filing of the certificate of sale. Minn.Stat. § 580.17 (1982). Any surplus above the lien and costs is to be paid to the mortgagor. Minn. Stat. § 580.10 (1982). The mortgagor may recover three times any ´ excess costs charged, but not paid. Minn.Stat. § 580.18 (1982). Although the statutory safeguards as set forth in sections 580.17 and 580.18 are available only to those mortgagors who, unlike the Heglands, are aware of the foreclosure itself, we cannot say that the trial court clearly erred in finding that examiner's fees alone did not void the sale.

The Heglands next argue that their due process rights were violated because of the lack of notice to Fearing and themselves. Minn.Stat. § 580.03 (1982) requires service of notice only on the person in possession of the subject premises.

Recently, the supreme court upheld the constitutionality of the foreclosure by advertisement procedures in face of a challenge based on the lack of a hearing before the sale. *Guidarelli v. Lazaretti*, 305 Minn. 551, 233 N.W.2d 890 (1975). However, an opinion issued earlier the same year discussed a challenge based on failure to notify a junior lienholder. *F & H Investment Co. v. Sackman-Gilliland Corp.*, 305 Minn. 155, 232 N.W.2d 769 (1975). Although notice to a junior lienholder is not required by the statute, the court in *F & H Investment* remanded for information on whether the lienholder had actual notice of the sale, and for a determination of the state's role in the foreclosure. This issue of state action, a necessary predicate to a Fourteenth Amendment due process violation, was not discussed in *Guidarelli*.

Because the attorney general's office was not properly notified, pursuant to Rule 144 of the Minnesota Rules of Civil Appellate Procedure, we are unable to rule on the due process issue raised by the Heglands. However, we remain concerned about the association's failure to notify the Heglands. It knew how to reach them. It had a policy of notification of owners. Apparently it did not follow that policy in this instance.

The basis of our concern was recognized in the Uniform Condominium Act. Minnesota adopted the uniform act with modifications in 1980. The uniform act, but not Minnesota's law, was amended the same year, and now includes an optional phrase in its lien foreclosure section. The phrase states:

> but the association shall give reasonable notice of its action to all lien holders of the unit whose interest would be affected.

Unif. Condominium Act 3–116, subd. a (1980). This phrase is intended to be utilized when the state power of sale statute does not require notice to junior lienholders. *Id.*, Comment 1. The Minnesota power of sale statute does not require such notice. Minn.Stat. § 580.03. However, the Minnesota legislature has not adopted the language contained in the uniform act.

Condominiums are frequently purchased as investments, and rented out to other parties. A statutory provision requiring service on the owner would avoid problems with forgetful or angry tenants who do not pass on the notice. Inasmuch as the owner of the condominium is presumably a member of the condominium owners' association, knowledge of the name of the owner and the owner's address should not be difficult to obtain. Certainly in the case at bar, the association was able to locate and notify that owner one day after expiration of the redemption period.

The problem of notice will almost certainly arise again under the present statutory provisions regarding notice of foreclosure on condominium assessment liens. These liens by their very nature will generally

involve a much smaller debt than the typical mortgage foreclosure. This problem is anticipated in the Uniform Condominium Act, which emphasizes the association's ability to use remedies short of foreclosure, and encourages use of more appropriate methods of collection when the amount due is small. *See* Unif.Condo.Act 3–115 (1978) and 3–116 (1980), Comment 3. Although Minnesota's condominium act does not include such provisions, it does assert the unit owner's personal liability for assessment liens. Minn.Stat. § 515A.3–115(e) (1982). This requirement implicitly encourages alternative collection methods, such as personal judgments. We recognize, of course, condominium associations need to retain the ultimate power of foreclosure against delinquent members. However, all possible encouragement should be given to attempt less drastic measures initially.

Despite our concerns about the association's apparent lack of adherence in this case to the policy of notice to the owners, we cannot say that the trial court clearly erred in finding that lack of notice alone did not void the sale.

We also acknowledge the rule that inadequacy of price alone generally is not enough to invalidate a foreclosure sale. *Guidarelli; Kantack v. Kreuer*, 280 Minn. 232, 158 N.W.2d 842 (1968). The operative word is *generally*. We recognize also that general rules have exceptions. *Guidarelli* and *Kantack* justify the general rule by noting plaintiff's remedy in his right to redeem. Further, these cases deal with foreclosure on mortgages, as do all the price inadequacy cases heretofore decided in Minnesota. None addresses the unique situation involved in foreclosure of condominium assessment liens. The Heglands were not aware of their right to redeem because they were unaware of the foreclosure itself. Even the association, by its general practice of notifying owners, appeared to recognize the equities involved in a procedure such as this.

The association purchased the Heglands' condominium for five percent of their equity. That price was grossly inadequate.

The association's behavior in assessing attorney's fees in an amount above the statutory limits, in failing to notify the Heglands of the foreclosure, but contacting them easily the day after the redemption period ended, and refusing to accept the Heglands' tender of the arrears, and countering with a grossly inflated request of $16,000, is ethically questionable.

The trial court set aside the foreclosure sale solely on the basis of the inadequacy of price. Under the particular facts of this case, we deem it appropriate to couple that inadequacy of price with the lack of notice to the owners and with the excessive attorney's fees where the right of redemption was a hollow one, to reach the conclusion that the trial court's decision was not erroneous. Therefore, we need not reach the question of whether inadequacy of price alone may invalidate an assessment lien foreclosure sale.

### DECISION

Under the particular facts of this case, the grossly inadequate price, combined with the lack of actual notice to the owners and the excessive attorney's fees where the right of redemption was a hollow one, is sufficient to support the determination of the trial court that the foreclosure sale must be set aside.

Affirmed.