Donald ZETAH, d/b/a Lake Region Electric, Respondent,

v.

Gerald J. ISAACS, et al., Defendants,

Capital Bank, Appellant.

No. C3-88-592.

Court of Appeals of Minnesota.

Aug. 9, 1988.

John W. Person, Breen & Person, Ltd., Brainerd, for respondent.

Gary A. Heck, Faegre & Benson, Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and PARKER and MULALLY *, JJ.

## OPINION

PARKER, Judge.

Capital Bank appeals denial of its motion to vacate an order confirming a foreclosure sale under Minnesota's mechanic's lien statute. Donald Zetah, d.b.a. Lake Region Electric, did electrical work on property owned by Gerald J. Isaacs. Isaacs failed to pay Zetah's bill and Zetah filed a mechanic's lien statement with the Crow Wing County Recorder. Isaacs and his wife subsequently mortgaged the property to appellant Capital Bank (hereafter "the bank"), which recorded the mortgage, leaving the bank's mortgage subordinate to Zetah's lien. In an action to foreclose his mechanic's lien, with the bank as a named party, the trial court found for Zetah, ordering the property sold to satisfy the lien.

The property was sold by the sheriff for the amount of the judgment and costs. The trial court's order confirming the sale was filed "subject to redemption provided by law." The bank did not appeal the order confirming the sale, but approximately seven months after expiration of the redemption period, moved to set aside the sale, vacate the order confirming the sale, and order a new sheriff's sale.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Zetah seeks review of that portion of the order applying Minn.R.Civ.P. 60.02 to the motion to vacate. We affirm.

## FACTS

In 1982, Isaacs purchased two contiguous tracts of land on Rice Lake in Crow Wing County and a resort thereon known as Smokey Bill's. The property consists of approximately 125 feet of lakeshore, nine cabins and a pump house. The property line intersects two cabins, and one well, pump and septic system serve the entire premises.

Isaacs purchased certain materials from Zetah and hired Zetah to do electrical work on the property. He failed to pay Zetah's bill for $2,650.18, and Zetah recorded a mechanic's lien statement on February 21, 1984. The bank's mortgage was not taken until June 27, 1984, nor recorded until July 19, 1984, and was thus subordinate to Zetah's lien.

In September 1984 Zetah brought an action to foreclose its lien. The bank was a named defendant in that action and interposed an answer. After trial, the trial court ordered judgment for Zetah in the amount of $4,036.68 plus interest and ordered both tracts of land sold to satisfy the lien and judgment. Zetah's attorney notified the bank's attorney, Thomas Kelley, that the order for judgment was filed on January 22, 1986. Judgment was entered on January 28, 1986.

Kelley received notice of the sheriff's sale, but contends that no service of the notice of sale was ever made on the bank. Notice of the sale was also posted and published for six weeks as provided by Minn.Stat. §§ 550.18–.19 (1986). The bank was not present at the sale.

The property, consisting of both tracts, was sold by the sheriff to Zetah for $5,129.63, the amount of the lien plus costs. The property had a fair market value of $112,500. The trial court confirmed the sale on June 20, 1986.

Thomas Borden, Zetah's attorney, called Kelley in June 1987, before the redemption period had expired, and inquired whether his clients were going to do anything about redemption. On June 25, 1987, the last day on which the bank could redeem, *see* Minn. Stat. §§ 514.15; 550.25 (1986), Kelley gave Borden permission to call the bank directly. Borden claims that he called the bank that same day. James McWilliams, bank vice president, admits that Borden called him, but not until June 26, 1987, when, he contends, he first received notice that the property had been sold. As the trial court noted, McWilliams does not deny being aware of the lien, the foreclosure action, or the court's decision, including its order for sale.

After the redemption period, Zetah took possession of the property. Zetah testified that the property was then in disrepair and that he incurred out-of-pocket expenses of $9,089.07 to make repairs and documented 442 hours of labor valued at $8,840. To finance these and other improvements, he obtained a $40,000 mortgage on the property with Brainerd National Bank. That mortgage was recorded before the Capital Bank brought its motion to set aside the sheriff's sale.

The bank did not bring its motion to set aside the sale until January 22, 1988, about seven months after the redemption period had expired. There is some evidence that the bank attempted to negotiate a settlement with Zetah beginning October 8, 1987.

## ISSUES

1. Is the trial court's order denying appellant's motion to vacate the order confirming the sheriff's sale appealable as of right?

2. Did the trial court have jurisdiction under Minn.R.Civ.P. 60.02 to vacate its order confirming the sheriff's sale?

3. Did the trial court abuse its discretion by failing to follow proper procedure in considering the bank's motion under Minn.R.Civ.P. 60.02 or in refusing to vacate the order confirming the sheriff's sale?

## DISCUSSION

### I

It would appear that the order confirming the sheriff's sale was appealable

under the authority of Minn.R.Civ.App.P. 103.03(e) or (f). Under that rule, an appeal may be taken

> (e) from an order which, in effect, determines the action and prevents a judgment from which an appeal might be taken;

> (f) from a final order * * * made or rendered in proceedings supplementary to execution.

The order was final in the sense that it made the sheriff's sale complete. *See* Minn.Stat. § 514.15 (1986); *Singer v. Novak*, 167 Minn. 208, 210, 208 N.W. 654, 655 (1926) (sheriff's sale becomes final when confirmed). It was also an order made in "proceedings supplementary to execution" in the sense that it effectuated the judgment in favor of Zetah or, alternatively, that it followed the sale and made it conclusive.

■ The bank, however, did not bring a timely appeal from the confirmation order, but petitioned the court seven months after expiration of the redemption period to have the sale set aside and the confirmation order vacated. The bank now appeals from the trial court's order denying its motion to vacate the confirmation order. However, an order denying a motion to vacate an appealable order is not appealable as of right. *See LeRoy v. Figure Skating Club of Minneapolis*, 281 Minn. 576, 577, 162 N.W.2d 248, 249 (1968); *see also Pollution Control Agency v. United States Steel Corp.*, 307 Minn. 374, 377, 240 N.W.2d 316, 318 n. 3 (1976) (cases cited therein).

The bank has not squarely addressed the rule on appealability articulated in *LeRoy*. In its reply brief, it distinguishes several cases cited by Zetah and contends that *Russell v. Blakeman*, 40 Minn. 463, 42 N.W. 391 (1889), is directly on point. We find that case to be inapposite. The defendant in *Russell* made a timely appeal of the order confirming the sheriff's sale, and the court granted relief on the basis that the defendant had not received notice of proceedings which terminated his mortgage. Other cases cited in the bank's brief on the appealability issue are not on point.

The bank has requested discretionary review in the event that it has no right of appeal. Such review is permissible under Minn.R.Civ.App.P. 105.01, and because of other important issues this case addresses, we grant discretionary review.

## II

■ Initially, this court must decide whether the trial court had jurisdiction to consider the bank's motion under Minn.R. Civ.P. 60.02(6). Zetah argues that the trial court did not have jurisdiction under the rules to grant or deny the bank's motion to vacate a foreclosure sale. He contends that post-judgment proceedings (i.e., the sheriff's sale, report of sale and confirmation) are "proceedings in rem" governed strictly by statute and are not civil proceedings controlled by the Minnesota Rules of Civil Procedure. We reject Zetah's argument because, although a mechanic's lien may be purely a creature of statute, an action to enforce it 'is an ordinary civil action. *See Finlayson v. Crooks*, 47 Minn. 74, 76, 49 N.W. 398, 399 (1891).

Also, Minnesota Statutes provide that the rules of civil procedure are applicable in an action to enforce a mechanic's lien. Minn.Stat. § 514.10 (1986) provides that an action to enforce a mechanic's lien shall be conducted in the same manner as actions for the foreclosure of mortgages. The statute governing mortgage foreclosure states that "[a]ctions for the foreclosure of mortgages shall be governed by the same rules and provisions of statute as civil actions," except as otherwise provided. Minn.Stat. § 581.01 (1986). Finally, Minn.R.Civ.P. 81.01(1) provides that the rules do not govern "proceedings listed in Appendix A insofar as they are inconsistent or in conflict with the rules." Appendix A indicates that Minn.Stat. §§ 514.01–.17, which cover mechanic's liens, are excepted from the rules to the extent that they are inconsistent with the rules.

Zetah does not argue that some provision of these sections is inconsistent with the rules and therefore supersedes the rules. In any event, there does not appear to be any inconsistency either between the rules

and the mechanic's lien statutes or the rules and the mortgage foreclosure statutes. We conclude, therefore, that the trial court had jurisdiction to consider the bank's motion under the authority of both the rules and the Minnesota Statutes.

### III

■ A. Having decided that the trial court had jurisdiction to consider the bank's motion, we must determine whether the trial court abused its discretion when it denied the bank's motion for relief. The trial court has great discretion in vacating its judgments under Minn.R.Civ.P. 60.02. *Simons v. Schiek's, Inc.*, 275 Minn. 132, 138, 145 N.W.2d 548, 552 (1966). Rule 60.02 provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment * * *, order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons: (1) Mistake, inadvertence, surprise or excusable neglect; * * * or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reason[ ] (1) * * * not more than one year after the judgment, order, or proceeding was entered or taken.

A motion to vacate an order under clause (6) must be brought within a reasonable time. A motion to vacate an order under clause (1) must be brought "not more than one year after the * * * order was entered or taken." Minn.R.Civ.P. 60.02. The only possible relief available to the bank was under clause (6), because it brought its motion to vacate more than one year after the confirmation order.

■ Clause (6) does not give the trial court discretionary power to grant relief on the basis of a reason enumerated in other clauses of the rule. *Newman v. Fjelstad*, 271 Minn. 514, 522–23, 137 N.W.2d 181, 186 (1965). If the reason the moving party is seeking relief properly falls under clause (1), relief is not available under clause (6). *Sommers v. Thomas*, 251 Minn. 461, 467, 88 N.W.2d 191, 195 (1958). Clause (6) is not intended to extend the time limit for granting relief under the other clauses of Rule 60.02. Rather, it is

a residual clause to cover unforeseen contingencies; intended to be a means for accomplishing justice in, what may be termed generally, exceptional situations * * *.

*Newman*, 271 Minn. at 521–22, 137 N.W.2d at 186 (citation omitted).

■ The bank claims it is entitled to have the confirmation order vacated under clause (6). Zetah argues that the bank's grounds for setting aside the confirmation order and sheriff's sale amount to no more than claims of excusable neglect under clause (1); thus, under that clause, the bank's claims for relief are time-barred. However, the bank contends that extraordinary circumstances and other reasons that justify relief bring its motion within the purview of clause (6). Specifically, the bank argues that (a) its attorney failed to notify it of the foreclosure sale; (b) it had no notice of the confirmation hearing or order; (c) it knew nothing about the redemption period until it had expired; (d) it did not know the nature or extent of its injuries until over a year after the confirmation order and thus it was impossible to comply with the time requirement of clause (1); and (e) the two parcels were sold together when one parcel would have satisfied the lien and the parcels were sold at a grossly inadequate price. With the exception of (e), all grounds for relief would appear to fall within clause (1) of Rule 60.02 as claims of excusable neglect and would be barred after one year.

The trial court properly permitted the application of clause (6) because of the bank's extraordinary loss. With respect to the bank's claim (e) (above), the trial court found that the price Zetah paid was shockingly inadequate, but did not find any irregularity in the sale of the parcels. Zetah bought the property, with an appraised fair market value of $112,500, for $5,129.73, approximately 1/22 of its market value.

■ Generally, a foreclosure sale free from fraud or irregularity will not be held

invalid for inadequacy of the price. *Kantack v. Kreuer,* 280 Minn. 232, 240, 158 N.W.2d 842, 848 (1968). Thus, inadequacy of the price *alone* is an insufficient basis upon which to proceed under clause (6) of Rule 60.02. Courts in other jurisdictions have permitted sheriff's sales to be set aside when the price obtained was so grossly inadequate as to shock the court's conscience. *See, e.g., McCartney v. Frost,* 282 Md. 631, 386 A.2d 784, 788–89 (1978) (*reversing* trial court's refusal to set aside sale when spread between fair market value of property and sale price was 9 to 1). Under the latter rule, it would appear that the trial court did not abuse its discretion in proceeding under clause (6) of Rule 60.-02, reasonably concluding that a shockingly inadequate price constituted an "other reason justifying relief."

The bank argues that the sheriff's sale was irregular because the two parcels were sold together and more real property was sold than was necessary to satisfy the lien. Minn.Stat. § 550.20 (1986) generally prohibits such sales in certain actions. *See Willard v. Finnegan,* 42 Minn. 476, 478, 44 N.W. 985, 985 (1890). However, that statute is directory only, *see id.* at 478, 44 N.W. at 985, and it is not clear whether that statute is applicable to mechanic's lien foreclosure sales.

The trial court convincingly reasons that violation of section 550.20 does not provide the requisite irregularity to circumvent the general rule preventing a sale from being set aside for mere price inadequacy. The trial court notes that Minn.Stat. § 581.04 (1986) permits separate tracts of mortgaged property to be sold in one parcel if it is most beneficial to the parties. Here the property line intersects two cabins, and one well, pump and septic system serve both parcels. As the trial court determined,

> separate sales of the two tracts would have been foolhardly, prejudicial to the interests of all parties, and probably impossible.

Relying on *In re Strawberry Commons Apartment Owners Association 1,* 356 N.W.2d 401 (Minn.Ct.App.1984), the bank claims it is entitled to relief because of the grossly inadequate price and other irregularities in the sale. *See id.* at 405. The irregularities include the fact that the parcels were sold as one and the failure of the bank's attorney to give it notice of the sale and confirmation.

The trial court reasonably determined that *Strawberry Commons* was inapposite; there, owners of property received *absolutely no notice of the sale.* The same cannot be claimed here. The court's January 22, 1986, order should have alerted the bank that the sale would soon follow and that it should take some action to protect its rights even if its attorney failed to do so.

B. The bank also argues that the trial court applied the wrong legal standard in refusing to grant it relief under Minn.R. Civ.P. 60.02(6). The court analyzed the bank's right to relief under the four-part test articulated in *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. 28, 53 N.W.2d 454 (1952), in which the supreme court held that

> it is the duty of the trial court, *in furthering justice by adopting a liberal policy conducive to the trial of causes on their merits,* to grant a motion to open a default judgment and permit a party to answer, if the party in default shows that he (a) is possessed of a reasonable defense on the merits, (b) has a reasonable excuse for his failure or neglect to answer, (c) has acted with due diligence after notice of the entry of judgment, and (d) that no substantial prejudice will result to the other party.

*Id.* 237 Minn. at 30, 53 N.W.2d at 455–56 (footnote omitted; emphasis in original). The trial court stated that the bank was required to meet this standard for relief under either clause (1) or (6) of Rule 60.02.

The bank argues that this standard "only applies in Rule 60.02 motions to vacate judgments under subdivision 1." In support of its contention it cites *Qualy v. MacDonald,* 395 N.W.2d 423 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Dec. 23, 1986), in which this court stated that the four-part test applies only to default judgments and that the appellants "cite no au-

thority or policy which would require its extension." *Id.* at 426. The bank further contends that the applicable test under clause (6) is the two-part test articulated in *Newman v. Fjelstad:* the movant must show (1) that the motion was made within a reasonable time, and (2) grounds justifying relief. *See id.* at 522, 137 N.W.2d at 186.

The bank's argument seems to constitute a distinction without a difference. Whether the grounds justify relief, from the two-part test, would seem to encompass considerations of (a), (b), and (d) of the four-part test. Similarly, whether the motion was made within a reasonable time could readily encompass (c) of the four-part test.

Assuming, but not deciding, that the two-part test is applicable as the bank argues, it nevertheless fails to meet its requirements by showing that its action was made within a reasonable time and that relief is justified. It cannot legitimately maintain that it did not receive sufficient notice of its plight. It received more notice than it was statutorily entitled to. Borden sent Kelley notice of the sheriff's sale, although such notice was not required; notice of the sale was published for six weeks and posted as provided in Minn.Stat. §§ 550.18–.19 (1986), though such formal notice was not required. The bank has pointed to no statutorily mandated notice provision which was not followed.

Additionally, the bank's claim for relief for its own attorney's alleged neglect is compounded because of its own responsibility for action. *See Kosloski v. Jones*, 295 Minn. 177, 180, 203 N.W.2d 401, 403 (1973) (movant not entitled to have judgment vacated on grounds of attorney's neglect when movant was personally guilty of inexcusable neglect); *Gould*, 379 N.W.2d at 647 (motion to set aside stipulated dismissal on grounds of attorney error that was brought more than one year after stipulation was filed was not timely). Regardless of any alleged failure on Kelley's part to notify the bank of the sheriff's sale, bank vice president McWilliams did not deny that the bank was aware the court had ordered a sale of the property. This put the bank on notice that a sheriff's sale was imminent and that confirmation of that sale would follow. *Cf. Bjornstad v. Penn Mutual Life Insurance Co.*, 202 Minn. 145, 148, 277 N.W. 521, 522 (1938) (notice of foreclosure and sale prior to sale sufficient to put plaintiff on inquiry notice as to regularity of proceedings). As the trial court stated:

> Capital slept on its rights for seven months after discovering its plight, and independent of the gross negligence of its attorney, Capital's own neglect is hardly excusable. It is in the mortgage business, yet failed to note the existence of the prior lien rights when it took its mortgage, and failed to make any inquiry or take any steps to protect its interest after being named in the foreclosure, and was at least aware that a sale had been ordered in [the court's] order of January 22, 1986.

> \* \* \* \* \* \*

> If the bank were an individual rather than an entity dealing with mortgages, priority of liens, judicial sales and rights of redemption on a daily basis, its conduct might be judged more generously.

Aside from the statutory and common law considerations preventing relief after the time for redemption from a judicial sale has expired, prejudice to both Zetah and Brainerd National Bank were also properly considered by the trial court. Zetah expended $17,929.07 of its own money and labor to improve the property and obtained a $40,000 mortgage from Brainerd National Bank to finance the improvements. Even if prejudice to Zetah and the bank could be avoided by the bank's payment of those expenditures and satisfaction of the mortgage, the bank's own neglect and delay of seven months in seeking to vacate the order would justify refusing relief. The trial court cannot be said to have abused its discretion in denying the order to vacate the order confirming the sale.

## DECISION

An order denying a motion to vacate is not appealable as of right, but we grant discretionary review. Jurisdiction under Minn.R.Civ.P. 60.02(6) is properly exer-

cised; although a mechanic's lien is the creature of statute, an action to enforce it is an ordinary civil action. The trial court did not abuse its discretion in refusing to vacate its order confirming a foreclosure sale under the mechanic's lien statute because, although the sale price was grossly inadequate, no irregularities in the sale were shown and appellant failed to show that relief was justified.

Affirmed.