Ronnie G. **VAIL**, Richard A. Dixon, Bruce Lillquist, Larry Stanley, Daryl L. Cooper, and Timothy C. Gartland, individually and on behalf of all other similarly situated, Appellees,

v.

Edward J. **DERWINSKI**, or his successor, Secretary of the Dept. of Veteran's Affairs, Appellant.

Nos. 90–5559, 91–1026.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1991.

Decided Oct. 8, 1991.

Patricia Mack Bryan, argued (Stuart M. Gerson, Jerome G. Arnold, Mark B. Stern and Ann Southworth, on the brief), Washington, D.C., for appellant.

David A. Leen, Seattle, Washington, argued (Douglas P. Radunz, Minneapolis, Minn., on the brief), for appellees.

Before LAY, Chief Judge, RONEY,[*] Senior Circuit Judge, and WOLLMAN, Circuit Judge.

LAY, Chief Judge.

This case involves a class action brought by military veterans who purchased homes under the VA home loan guaranty program. The district court[1] granted summary judgment to the class and enjoined the VA from obtaining a deficiency from the veterans under the VA's right of indemnity when the VA orders non-judicial foreclosure on VA home loans in Minnesota. 742 F.Supp. 1039. The plaintiff class members either defaulted on their loans or sold their homes to buyers who assumed the VA loan and then defaulted.[2] The private lenders then foreclosed and collected any deficiencies from the VA as guarantor. *See generally* 38 U.S.C. §§ 1801–1833 (Supp.1991); 38 C.F.R. §§ 36.4316–4319 (1990). The VA in turn sought indemnification from the veterans. The VA has intercepted tax refunds and medical disability checks to collect on deficiencies allegedly owed by veteran mortgagors under this system.

The statute and VA regulations do not establish a uniform federal procedure for foreclosure but instead contemplate application of state foreclosure law. *See* 38 U.S.C. § 1820(a)(6).[3] Under Minnesota statutes, foreclosure may be done under a judicial procedure requiring notice to the mortgagor, or by advertisement in which case the mortgagor does not receive notice. *See* Minn.Stat. § 580.01 (1990); *See also Norwest Bank Hastings Nat'l Assoc. v. Franzmeier*, 355 N.W.2d 431, 433 (Minn. Ct.App.1984) (describing different foreclosure procedures). When the latter procedure is used, Minnesota law bars a mortgagee from obtaining a deficiency judgment because the mortgagor has no opportunity to ensure that the real estate is sold for fair value. Minn.Stat. § 582.30 subd. 2 (1990). Generally the VA uses non-judicial foreclosure because it is more efficient and less costly.

The VA urges that it has an independent right of indemnity that survives the anti-deficiency statute under Minnesota law. Alternatively, if Minnesota law precludes any type of recovery from the veteran after non-judicial foreclosure, the VA argues that its right of indemnity preempts Minnesota law.[4]

The district court recognized that the VA has a right of indemnity. This right is incorporated into the VA's regulations, 38 C.F.R. § 36.4323(e), and the Supreme Court has recognized that the VA's enabling legislation affords the VA an independent right of indemnity. *United States v. Shimer*, 367 U.S. 374, 387–88, 81 S.Ct. 1554, 1562–63, 6 L.Ed.2d 908 (1961). The

---

[*] The HONORABLE PAUL H. RONEY, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. The Honorable Edward J. Devitt, Senior District Judge for the District of Minnesota.

2. The veterans remain liable for the mortgage debt even after another party assumes the loan, unless the veteran obtains a release from the VA.

3. *See, e.g.,* 38 C.F.R. § 4315(b)(2) (1990) (providing that partial payments on a delinquent mortgage may be returned if "[f]oreclosure has been commenced by the taking of the first action required for foreclosure under local law").

4. Under the formal judicial foreclosure process the VA may exercise its right of subrogation to collect any deficiency. 38 U.S.C. § 1832(a)(1) (1988); 38 C.F.R. § 36.4323(a) (1990). The VA concedes that its right to subrogation does not apply here because the lender proceeded under non-judicial foreclosure. The VA's subrogation right is derivative from the lender. Because the lender loses its rights by virtue of the anti-deficiency statute, the VA's derivative rights are necessarily forfeit.

591

VA urges that this right is independent of and superior to the state anti-deficiency statute.

The district court denied the VA's claims under the authority of *Whitehead v. Derwinski*, 904 F.2d 1362 (9th Cir.1990). In *Whitehead*, a similar class suit brought against the VA, the Ninth Circuit faced the identical issue although under Washington law. The court found no federal preemption because Washington foreclosure law was not inconsistent with federal law.[5] However, the court found that the VA forfeited its indemnity rights along with its subrogation rights when it opted to use foreclosure by advertisement. In doing so, the Ninth Circuit characterized the VA's statutory right of subrogation as its *primary right*.[6] The court observed:

> Because the VA directs the lender's choice between the two methods available in Washington, it is in complete control of its ability to be made whole. Given the availability of the judicial foreclosure alternative, which allows the VA to exercise its primary right to subrogation and proceed directly against the debtor, the VA may not choose the non-judicial foreclosure alternative, and then resort to its right to indemnity. The federal statutory and regulatory scheme contemplates reliance on state foreclosure procedures. Where state procedures preclude holding the debtor personally liable, the VA retains its right to do so by way of indemnity. Where, as in the state of Washington, state foreclosure procedures afford the VA identical protections, there is no conflicting state law to displace.

*Id.* at 1369.

The *Whitehead* court reasoned:

Allowing the VA to ignore Washington law "would disrupt commercial relationships predicated on state law." [*United States v.*] *Kimbell Foods*, 440 U.S. [715] at 729, 99 S.Ct. [1448] at 1459 [59 L.Ed.2d 711 (1979)]. In adopting the dual foreclosure scheme, the Washington legislature balanced the debtors' and lenders' rights. *See Donovick v. Seattle–First Nat'l Bank*, 111 Wash.2d 413, 757 P.2d 1378, 1379–80 (1988) (en banc). "Non-judicial foreclosure obviously provides significant advantages to a creditor seeking to liquidate security for a defaulted loan; these advantages have been conferred by the legislature in return for the creditors' relinquishment of the right to obtain a deficiency judgment." *United States v. Vallejo*, 660 F.Supp. 535, 538 (W.D.Wash.1987). Allowing the VA to instruct lenders to foreclose non-judicially under Washington law, and then use its federal right to indemnity to override the consequences of that instruction, circumvents the balance the state legislature intended in designing and adopting the two foreclosure options.

*Id.* at 1372.

The district court applied the reasoning in *Whitehead* and issued an injunction barring the VA's recovery. We must respectfully disagree with this analysis. First, we cannot agree with the *Whitehead* premise that when the state provides dual foreclosure procedures the judicial foreclosure procedure is primary and the non-judicial procedure is secondary. No rationale exists for this conclusion. Each foreclosure process stands on its own footing and provides different consequences. As the Ninth Circuit observed, the non-judicial procedure contains significant advantages to

---

5. The court stated:

Because it provides an alternative which allows the VA to exercise its primary right to subrogation and receive the full measure of protection without displacing state law, the Washington scheme is consistent with federal law. The federal regulations protect the VA's ability to collect deficiencies remaining after foreclosure by providing both a right to subrogation and a right to indemnity.

*Id.* at 1369.

6. In contrast, the court observed that when a state anti-deficiency law precludes collection of a deficiency *even by way of subrogation*, the VA *may* exercise its independent indemnity right, which under principles of preemption displaces the effect of state law. *See id.* at 1368–69 (distinguishing *United States v. Rossi*, 342 F.2d 505 (9th Cir.1965) (applying California law), and *McKnight v. United States*, 259 F.2d 540 (9th Cir.1958) (same)).

the creditor, but the debtor's interest is protected by relinquishment of the right of the creditor to obtain a deficiency judgment. *Id.*

The *Whitehead* court concluded that the federal right of indemnity cannot override the state interest in protecting the debtor under the anti-deficiency law. Beyond the state law provision that subrogation rights are lost in non-judicial foreclosure, the court further found that the VA's independent right of indemnity somehow disappears as well. The *Whitehead* court apparently found the indemnity right subsumed in the VA's right of subrogation.[7]

Although Minnesota and Washington law are identical in providing both a judicial foreclosure procedure, which would preserve the VA's right of subrogation against the veteran, and a non-judicial foreclosure procedure, under which no deficiency judgment may be obtained, Minnesota law affirmatively recognizes that rights of third parties under contracts of guaranty survive the anti-deficiency laws of Minnesota.

■ In *Victory Highway Village, Inc. v. Weaver,* 634 F.2d 1099 (8th Cir.1980), we held that Minnesota's anti-deficiency statute did not discharge the liability of a guarantor of a Small Business Administration (SBA) loan after the SBA foreclosed by advertisement. *Id.* at 1102–03; *see also National City Bank v. Lundgren,* 435 N.W.2d 588, 591–92 (Minn.Ct.App.1989) (citing with approval the *Victory Highway* court's interpretation of Minnesota law).

The principle behind the *Victory Highway* decision is that Minnesota's anti-deficiency statute does not extinguish claims by the mortgagee based on rights derived from sources other than the mortgage. The language of the statute addresses only the rights between mortgagor and mortgagee. Thus, the mortgagee's claim against the VA as guarantor survives non-judicial foreclosure.

It follows that the VA's indemnity right also survives foreclosure by advertisement. The indemnity contract is essentially a third-party guarantee. The guaranty agreement and associated right to indemnification constitute a third-party contract between guarantor and mortgagor, and this relationship is not covered under plain language of Minnesota's anti-deficiency statute. The principle of the statute also does not apply because, as was the guarantee agreement in *Victory Highway,* the VA's right to indemnity derives from a contract independent of the mortgage. As indemnitor the veteran is in the same position as the guarantor: accordingly we conclude that Minnesota law does not impair the VA's right of indemnification and we conclude there is no need for finding federal preemption.

### LACK OF NOTICE

■ The indemnity agreement imposes a heavy obligation on the veteran, one that weighs even heavier when the veteran allows a purchaser to assume the VA loan and does not obtain a release from the VA.[8]

---

7. The *Whitehead* court placed great emphasis on the fact that the VA has total control over the type of foreclosure used so it can preserve its right to a deficiency by ordering judicial foreclosure. The court deemphasized the VA's indemnity right, finding that right important only when subrogation is not available. 904 F.2d at 1369. In light of *Shimer* the court's finding is arguable. *Shimer* makes clear that indemnity is an independent remedy. The *Whitehead* court provided no support for its conclusion that the VA's indemnity right was essentially a backup for subrogation. By requiring the VA to choose a foreclosure route and accept the state law consequences, the *Whitehead* court chose to limit the VA's remedies and effectively nullify the VA's right to indemnity.

8. We note that Congress has recently changed the program to effectively eliminate the need

for the VA to obtain indemnity from the mortgagor. The VA has in fact embarked on a substantial program to release veterans from deficiencies and Congress has since changed its program to eliminate the need to collect deficiencies. A veteran may request a waiver of liability on the ground that he is not materially at fault for the deficiency and that imposing liability would be unconscionable. 38 U.S.C. § 3102(b) (1988). Also, as of 1990 Congress has increased the loan fee payable by the veteran at closing. Payment of that fee releases the veteran from liability for any deficiency except for cases of fraud, misrepresentation or bad faith. *See* Veteran's Benefits Amendments Act of 1989, Pub.L. No. 101–237, 1989 U.S.Code Cong. & Admin.News (103 Stat.) 2069–78 (codified at 38 U.S.C §§ 1801–34). These changes, however, do not affect the obligations of mortgagors under loans closed prior to 1990.

The veteran then cannot ensure that the new owner will comply with the mortgage covenants, yet the veteran is still liable upon the new owner's default. This unenviable situation is exacerbated when the veteran receives no notice of foreclosure and cannot ensure that fair value is received, nor can the veteran redeem if he is unaware of the sale.

Although perhaps this scheme is enforceable as between private parties, government participation in this type of foreclosure procedure raises serious due process questions.[9] "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order to be heard they must first be notified.'" *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1971) (quoting *Baldwin v. Hale,* 1 Wall. 223, 233, 17 L.Ed. 531). In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Court held that any state action that will affect a property interest requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657.

A highly relevant case following *Mullane* is *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In that case the Court considered an Indiana statute that allowed the state to foreclose for delinquent property taxes without notice to the mortgagee. Although the mortgagor received personal notice under the statute, the court held that "[s]ince a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." *Id.* at 798, 103 S.Ct. at 2711. The Court concluded that because notice by advertisement is not designed to reach those with a legal interest in the property, and because the state had an inexpensive and reliable means of reaching the mortgagee, notice by posting and publication did not satisfy the *Mullane* "reasonably calculated to apprise" requirement. *Id.* at 799, 103 S.Ct. at 2711–12.

All that was said in *Adams* has equal force in the present case. Indeed, if the mortgagee's interest in property merits personal notice, the mortgagor's rights would appear to require at least that amount of protection. This was the reasoning of the court in *United States v. Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985). Addressing the same issue that is currently before us, the *Whitney* court found that the due process clause barred the VA from recovering a deficiency from a veteran when the VA had not made a reasonable attempt to provide the veteran with personal notice of the foreclosure sale. Although the court acknowledged that the VA's indemnity right as developed under *Shimer* allows the VA to recover from the veteran

**9.** Most state courts considering due process challenges to non-judicial foreclosure statutes have upheld the procedure on the ground that there is no state action. *See, e.g., Homestead Savs. v. Darmiento,* 230 Cal.App.3d 424, 281 Cal.Rptr. 367 (1991); *National Airport Corp. v. Wayne Bank,* 73 Mich.App. 572, 252 N.W.2d 519 (1977); *Coffey Enters. Realty & Dev. Co. v. Holmes,* 233 Ga. 937, 213 S.E.2d 882 (1975). In the present case state action is supplied by the VA's involvement in ordering foreclosure. *See Whitney,* 602 F.Supp. at 733 n. 11.

The Minnesota Court of Appeals confronted the worst case scenario involving Minnesota's non-judicial foreclosure procedure in *In re Strawberry Commons Apartment Owners Ass'n 1,* 356 N.W.2d 401 (Minn.Ct.App.1984). The owner of a condominium sold the unit on a contract for deed and the purchaser rented out the property. The property was foreclosed by advertisement for failure to pay association fees, and neither the original owner nor the purchaser received notice. The property sold at auction for only five percent of its net value. *Id.* at 403. The court noted that "the right of redemption was a hollow one" because the owner was unaware the property had been sold. *Id.* at 405. Although the court did not reach the due process issue it invalidated the foreclosure "under the particular facts of th[e] case." *Id.*

The Minnesota Supreme Court, without addressing the state action requirement, has held that a hearing is not required prior to non-judicial foreclosure. *Guidarelli v. Lazaretti,* 305 Minn. 551, 233 N.W.2d 890, 892 (1975). However, the Minnesota courts apparently still have not decided the issue posed in *Strawberry Commons*—whether due process consideration under Minnesota law requires notice to the owner of the property prior to non-judicial foreclosure.

even when the mortgagee's rights are extinguished, the court held that "the Government's intimate complicity in the violation of defendant's statutory and constitutional rights" made that right unenforceable. *Id.* at 734.

The remedy in *Whitney* was not to require the VA to pursue judicial foreclosure procedures under New York law. Instead, the court held that the VA must ensure that the veteran receive notice prior to the foreclosure sale. *Id.* The VA can easily comply with this requirement because it receives notice of foreclosure from the lender and because it is likely to know the address of the original mortgagor and indemnitor. Indeed, if the VA can find these veterans to withhold their disability checks and tax refunds, it should have no difficulty notifying them of a pending foreclosure sale.[10] Requiring the VA to provide notice seems a logical and fair idea that the VA should have implemented on its own in the first place.

Although the veterans raised a due process claim before the district court, the issue was not addressed on appeal because the veterans prevailed on other grounds. However, without deciding whether the due process clause otherwise would be violated, we hold that the VA must make a good faith attempt to provide reasonable personal notice to the indemnitor of the foreclosure sale before it can obtain a recovery under its indemnity contract. In developing federal rules of decision we can be responsive to concerns for fairness whether or not they rise to constitutional magnitude. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943) (stating that "[i]n absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards").

This rule of decision prevents frustration of the ultimate objective of the VA program, which is to provide assistance to veterans and make their lives better, not worse. The notice requirement is not difficult or expensive, so it does not impair the

VA's right to indemnity. The VA may continue to follow Minnesota's non-judicial foreclosure procedure as long as it attempts to provide the indemnitor with reasonable personal notice of the foreclosure sale. Thus, the rule also is in accord with *Shimer* because it maintains the VA's ability to abandon its subrogation right and rely on its indemnity right when it proceeds by non-judicial foreclosure. The rule also fulfills the veteran's expectation that he would receive notice of the foreclosure sale. Above all, the rule is fair.

Accordingly, the district court's order is modified to allow the VA to exercise its indemnity rights against the veteran after non-judicial foreclosure when the VA has made a good faith effort to provide reasonable personal notice to the veteran prior to the foreclosure sale.

The judgment, as modified, is affirmed.

---

**10.** Significantly, the VA does not contend that it should not or cannot provide notice to the veter-

ans. It argues only that it need not provide such notice.