**RESOLUTION TRUST CORPORATION, Respondent,**

v.

**Nanci M. WHITLEY, Appellant.**

**No. WD 41623.**

Missouri Court of Appeals, Western District.

Dec. 11, 1990.

J.D. Williamson, Jr., Independence, for appellant.

Daniel Bukovac, John K. Power of Watson, Ess, Marshall & Enggas, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

These proceedings were initiated by appellant, who filed an action to set aside a foreclosure sale and for damages for wrongful foreclosure. This was followed by an action filed by respondent for a deficiency judgment following the foreclosure sale. The cases were consolidated. The trial court entered summary judgments applicable to both causes and this appeal followed. The judgments are reversed and the cause remanded.

Since this appeal comes to this court on entry of summary judgment, the record herein consists of only those documents provided by the parties in support of the action taken by the trial court and no recorded transcript. This court has reviewed this documentation and gleaned therefrom the following pertinent facts:

On April 22, 1986, appellant received from respondent a letter captioned, "Re: Loan Request–Independence Federal Savings Bank." This letter consisted of some nine pages and has become known as the "commitment letter" in these proceedings. This court finds it unnecessary to set forth this letter verbatim, but certain portions relative to this appeal will be set forth below.

The initial paragraph reads as follows:

Independence Federal Savings Bank, a Federal Savings Bank ("Independence Federal"), hereby agrees to make, and by its acceptance of this Commitment, Borrower agrees to accept, a construction loan in the amount and upon the terms and conditions set forth herein.

In addition, the same letter contained the following language:

9. *Additional Contingencies.* The obligation of Independence Federal to make the Loan described herein shall be expressly contingent on the following conditions:

(a) Satisfactory on-site inspection of the realty described in paragraph 8, above, by Independence Federal.

(b) Final approval of Independence Federal Board of Directors.

(c) Execution and delivery of all documentation required by the Federal Home Loan Bank Board.

(d) Satisfactory appraisal.

The letter concluded with the signatures of appellant and an authorized agent for respondent.

On May 1, 1986, appellant filed with respondent a "Residential Loan Application." This application was for a conventional type loan for $280,000.00 at 9.5% interest for 360 months. The designated purpose of the loan was for the *purchase* of property described as Lot 43 Thornhill, 9803 N. Revere in Platte County, Kansas City, Missouri. This document, in printed form, provided the following:

"Purpose of loan:    x Purchase    __ Construction–Permanent
__ Construction    __ Refinance    __ Other (Explain)

Complete this line if Construction–Permanent or Construction loan:

| Lot Value Data Year Acquired ___ | Original Cost $ | Present Value (a) $ |
|---|---|---|
| Cost of Imps. (b) $ | Total (a + b) $ | (Enter Total as Purchase Price in Details of Purchase)" |

In the foregoing portion of the loan application, the only item checked is "Purchase" under the heading "Purpose of loan". In other words, the application makes no reference to the loan as a construction loan.

On May 19, 1986, appellant executed a promissory note with an accompanying Deed of Trust. Both the note and Deed of Trust referenced and incorporated the "Commitment Letter" and its terms.

Appellant opened a checking account with respondent who, at the request of appellant, deposited monies in the account. The deposits were based upon the credit extended under the promissory note and were made at various times upon the oral request of appellant. The parties are now in dispute or disagreement that documentation for construction bills were requested by respondent.

For a period from May until September, 1986, appellant wrote several checks. Some of these checks were for payment of construction costs on the residence being constructed and others were not.

On September 4, 1986, appellant executed a check from the above-referred-to checking account in the sum of $20,000.00, payable to herself. She also attempted to transfer this sum to another banking facility. In response to this action, respondent refused to honor this check and, in addition, sent to appellant on September 9, 1986 a "Notice of Default". This notice reads as follows:

### NOTICE OF DEFAULT

Dear Ms. Whitley:

Please be advised that First Savings Bank, F.S.B. is hereby declaring your loan in the amount of $280,000.00 dated May 19, 1986, in default on account of your attempted unauthorized withdrawal from the construction loan proceeds last week and your attempt to transfer such proceeds to a personal account at the American Bank of Platte County

The Bank, in its investigation, has determined that there are substantial outstanding bills and claims on your home and Bank employees have advised me that, after repeated requests, you have heretofore failed to provide the Bank with invoices or paid bills on prior draws. The Bank accordingly has deemed itself insecure.

This is to further advise you that the Bank has this date set-off against your personal account number 300128, the sum of $20,000.00 and returned the same to the construction loan as further security for its first lien position. This is to give you ten (10) days from the date of this notice to pay the loan in full and satisfy all claims against the property, or the Bank will have no other choice but to foreclose its Deed of Trust.

Foreclosure of the property proceeded. Appellant filed her action to set aside the foreclosure and for damages for wrongful foreclosure. Respondent then filed an action seeking a deficiency judgment upon the foreclosure sale. Both parties moved for summary judgment following a barrage of pleadings and amendments to the pleadings. The trial court entered summary judgment for respondent and against appel-

lant in both (now consolidated) actions and this appeal followed.

Before this court, appellant contends the trial court erred in entering summary judgment on her claim for wrongful foreclosure in that there existed an issue of genuine material fact; and that trial court further erred in entering summary judgment against her and to the favor of respondent for a *deficiency judgment because there* existed an issue of a genuine material fact preventing entry of summary judgment.

Appellant argues that there is no provision within the "commitment letter", the promissory notes or the Deed of Trust which authorizes a declaration of default and foreclosure because of the manner in which she dispersed the funds from the aforesaid checking account with respondent. In contrast, respondent asserts that when the aforementioned documents are construed together, in addition to appellant's admissions that the loan was for construction purposes, there existed grounds for a declaration of default and a foreclosure sale.

The sections of the "commitment letter", the promissory note, and the Deed of Trust have been partially set forth above and need not be repeated. In the Deed of Trust, there is to be found two sections, 6.01 and 6.02, which address "Default" and "Remedy". The length of both of these *sections* do not warrant either to be reprinted herein. It suffices to say that neither section provides any express restriction or alternative and prescribed method for the disbursement of the checking account funds. In addition, the Deed of Trust refers to the "commitment letter". The promissory note likewise contains no provision for disbursement of the checking account funds or any expression of instruction upon their disbursement. The promissory note also refers to the "commitment letter."

Concerning the "commitment letter", there is no prescription for the disbursement of the checking account funds or any expressed prohibition as to their withdrawal. Respondent contends that use of the term "construction loan" is so broad and encompassing as to prohibit the use of the funds for anything other than actual construction costs. Respondent supports this position by further pointing to admissions by appellant that the loan was a "construction loan" and that appellant, in fact, executed checks for purposes other than directly for construction costs. They further assert the demand of appellant for proof of paid construction costs. This latter fact appellant denies.

Through interrogatories and deposition, appellant acknowledged and admitted that the loan was for construction of the residence. However, appellant asserts there never was any restriction upon the manner in which she was to use its funds, only that the construction costs were to be paid. When deposed, appellant testified:

Q. Who did you talk with at the bank about how mechanically the construction loan commitment was to be paid out?

A. Nobody.

She then went on to claim that the $20,-000.00 which she attempted to withdraw from respondent would be paid toward construction costs, and further asserted these issues in an affidavit filed with the trial court.

To clarify, the real issue before this court is not whether the loan granted to appellant was a construction loan, but rather, is the wording within the four corners of the above-mentioned documents (when these documents are construed together) such as to restrict or exclusively limit the use of these funds for construction purposes, thus allowing respondent to declare a default and proceed with foreclosure when appellant attempted to remove funds for other than construction purposes.

It is pointed out that prior to the commencement of these proceedings, appellant was not delinquent upon any payment under the promissory note. In addition, it is contested that there were unpaid construction costs which could not be paid from the funds allocated to the account.

Respondent urges that the very wording of the documents, or at least the proper construction of their terms, made the loans exclusively *construction loans* and default

arose when appellant executed checks for other purposes. This court cannot and does not construe those documents to place such a restricted use upon the funds. In her deposition, appellant stated not only that she would orally contact a representative of respondent when a deposit of funds was required, but that of the $280,000.00 initial loan, $240,000.00 was to be for construction and $30,000.00 for loan payments. There was never any discussion regarding the remaining $10,000.00.

The real issue is whether appellant was restricted in the manner for which the loan was granted. If it is believed that only $240,000.00 of the loan went for construction, and the remaining $40,000.00 was to be used as asserted by appellant, then the question is whether the loan was in default. Respondent, in fact, originated and drafted the documents. It would have been quite simple to have expressly declared the now-claimed limited use or restricted use of the funds in the account. The terminology of the documents, standing alone, does not lend itself to the exclusiveness now urged by respondent. Appellant strongly asserts that while the loan was for construction purposes, there never was any discussion, agreement or limitation imposed upon the manner in which she executed checks on the account. By deposition testimony and by affidavit, she asserts there were funds available to pay the construction costs, and she has raised a genuine and material issue of fact as to whether the loan in question was exclusively for construction purposes and whether she was limited or restricted in the manner in which she executed checks drawn on the checking account.

It cannot be said that standing alone, the documents heretofore referred to on their face or by any fair construction thereof, authorized respondent to declare a default and to proceed with foreclosure. In other words, the contractual documents by themselves did not grant authority to respondent to declare a default and/or foreclose the property. *See Spires v. Lawless*, 493 S.W.2d 65 (Mo.App.1973).

It may very well be that there exists other evidence that appellant knew of a limited or restricted use, but by deposition testimony and affidavit, she denies the same, thus placing squarely at issue the sole question involved herein, that being whether appellant was at liberty to use the funds from the loan in the manner in which she did. This is a genuine and material issue of fact which prohibited entry of summary judgment by the trial court and is left to determination by the trier of fact.

The summary judgment entered for respondent for a deficiency judgment, of course, was predicated upon the correctness of the summary judgment entered for respondent on the appellant's claim of wrongful foreclosure. As noted above, the entry of summary judgment regarding appellant's claim for wrongful foreclosure was erroneous as there existed a genuine material question of fact.

This judgment (which was in the form of two summary judgments) is hereby reversed and this cause is remanded for further proceedings in accordance with this opinion.

All concur.