Bernard S. BERKE, et al., Appellants,

v.

**RESOLUTION TRUST CORPORATION**
as the Receiver for Midwest Savings
Association, F.A., et al., Respondents.

No. C6–91–1357.

Court of Appeals of Minnesota.

March 31, 1992.

Review Denied May 21, 1992.

John Garrett Westrick, Walsh & Westrick, St. Paul, for appellants.

James A. Geske, O'Neill, Burke & O'Neill, St. Paul, for respondents.

Considered and decided by HUSPENI, P.J., and RANDALL and SHORT, JJ.

## OPINION

RANDALL, Judge.

Appellants sold real estate on a contract for deed. In March 1986, the vendee mortgaged this land and other land. Appellants signed the mortgage, which subordinated their contract for deed vendors' interest to the mortgage. As a result of the vendee's subsequent sales, the only remaining mortgage security was part of appellants' land. In February 1989, the vendee filed bankruptcy and defaulted on the mortgage. In March 1990, appellants sued the mortgagee alleging misapplication of the land sale proceeds. The mortgagee bought the property at the foreclosure sale. In October 1990, the Resolution Trust Corporation was appointed receiver for the mortgagee. Appellants subsequently amended their complaint, alleging an invalid foreclosure sale. In an April 1991 order, the trial court granted summary judgment against appellants. We affirm.

## FACTS

Appellants Bernard S. Berke and E. Norman Barsness, and Scottland, Inc. formed the Greenhaven of Burnsville Limited Partnership (Greenhaven), with Scottland as Greenhaven's general partner, and Berke and Barsness as its limited partners. Also, Berke and Barsness, along with their wives (collectively appellants) sold land to Green-

haven on a contract for deed for a development project, including appellants' land and other land. The partnership agreement recognized that the land would be used as collateral for development loans. All business decisions were under Scottland's "sole and exclusive control."

In March 1986, Greenhaven and appellants signed a mortgage of their land to Midwest Savings Association (Midwest). Under the mortgage, Midwest would look only to Scottland and the property for satisfaction of the mortgage, but appellants could cure any default by Scottland.

Under one mortgage provision, when Greenhaven wanted to sell unfinished portions of the development it paid a certain amount on the mortgage pursuant to a formula. An alternative provision allowed Midwest to release property from the mortgage without payment on the mortgage.

In October 1988, Greenhaven sold a parcel of appellants' land to the Healey/Ramme Company. To facilitate the sale, appellants, still fee owners, executed a warranty deed. Of the sale's proceeds about $400,000 was available to be applied against the mortgage, but Scottland directed Midwest to apply the bulk of these funds to non-mortgage debts Scottland owed Midwest.

In February 1989, Greenhaven and Scottland filed for bankruptcy and defaulted on the mortgage. Midwest subsequently foreclosed on the remaining land securing the mortgage. Alleging "diversion" of the Healey/Ramme sale proceeds, appellants sued Midwest, Greenhaven and Scottland. The foreclosure notice indicated the outstanding mortgage exceeded $1.1 million. At the foreclosure sale, Midwest bought the property for $357,000.

In October 1990, the Resolution Trust Corporation (RTC) was appointed receiver for Midwest. Appellants later amended their complaint alleging that if the release formula had been followed the mortgage amount due would have been about $62,000 and that the sale was irregular because of the overstatement.

On the parties' cross-motions for summary judgment, the trial court concluded that any real dispute appellants had was with Scottland, that Midwest had no duty vis-a-vis appellants regarding the Healey/Ramme sale proceeds, that Scottland had the authority to authorize the "diversion" of the sale proceeds and that RTC was entitled to summary judgment. This appeal followed.

After appellate briefing was complete, RTC moved this court to dismiss the case for lack of subject matter jurisdiction alleging federal courts have exclusive jurisdiction over claims involving RTC and because appellants have failed to exhaust their administrative remedies.

### ISSUES

1. Should the case be dismissed for lack of subject matter jurisdiction?

2. Did Midwest Federal misapply the proceeds of the Healey/Ramme sale?

3. Should the foreclosure be set aside for irregularities?

### ANALYSIS

**I.**

 While RTC's failure to raise the jurisdictional issue to the trial court does not preclude our addressing it on appeal, see Minn.R.Civ.P. 12.08(c) (lack of subject matter jurisdiction may be raised at any time), we cannot conclude state courts are deprived of all jurisdiction over disputes involving RTC.

RTC's claim that federal courts have exclusive jurisdiction over cases involving RTC is inconsistent with the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). FIRREA sets out an administrative procedure for determining claims made for RTC assets. To support its exclusive jurisdiction argu-

ment, RTC cites the FIRREA provision which states that if a certain amount of time passes after a claim has been filed with RTC, or if RTC denies a claim, the claimant

> may request administrative review of the claim * * * or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C.A. § 1821(d)(6)(A) (West 1989) (emphasis added). RTC construes this provision as an exclusive grant of jurisdiction to the federal courts. We disagree.

To construe this provision as an exclusive grant of jurisdiction to the federal courts renders the parenthetical "continue" language null. See Marquis v. Federal Deposit Ins. Corp., 779 F.Supp. 6 (D.N.H. 1991) (" '[C]ontinue' implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. A claimant could not 'continue' an action over which the court has been deprived of jurisdiction. The claimant would have to 'refile' such a lawsuit because the suit would have been dismissed."); Marc Dev., Inc. v. Federal Deposit Ins. Corp., 771 F.Supp. 1163 (D.Utah 1991) (case properly removed to federal court). Specifically, a pre-receiver action filed in state court cannot be "continued" after receivership if it must be dismissed from state court and refiled in federal court. Dismissal of the state court action does not continue that action. Thus, references to which federal courts may entertain an RTC action must pertain to suits filed for the first time after the claim has been processed under FIRREA's administrative procedure[1].

---

1. FIRREA's legislative history indicates its claims procedure was specifically designed to address two problems the Supreme Court noted in the pre-FIRREA claims determination provisions. In *Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561, 586, 109 S.Ct. 1361, 1375, 103 L.Ed.2d 602

(1989), the Supreme Court found FIRREA's predecessor constitutionally infirm because it purported to allow the Federal Savings and Loan Insurance Corporation (FSLIC) to finally adjudicate claims with only limited judicial review. Also, for certain claims, there was no time limit to the period for adjudication. Ac-

Our conclusion is consistent with other FIRREA provisions. Under 12 U.S.C.A. § 1821(d)(2)(A)(i) (West 1989) RTC succeeds to "all rights, titles, powers, and privileges of the insured depository institution." One of Midwest's pre-receivership rights entitled it to litigate claims against it in state court if appropriate. Also, that the removal statutes are conditionally phrased suggests that state court jurisdiction is not preempted. *See* 12 U.S.C.A. § 1819(b)(2)(B) (West 1989) ("the Corporation *may* * * * remove any action, suit, or proceeding from a State court to the appropriate United States district court") (emphasis added); 12 U.S.C.A. § 1441a(1)(3) (West Supp.1991) ("[t]he Corporation *may* * * * remove any such action, suit, or proceeding from a State court to the United States District Court") (emphasis added); 28 U.S.C.A. § 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, *may* be removed by the defendant") (West Supp.1991) (emphasis added). Additionally, the statute granting federal courts jurisdiction over RTC cases indicates federal courts have "original jurisdiction" but does not mention "exclusive jurisdiction." *Further, several RTC cases have been litigated in state court. See, e.g., Dillon v. Resolution Trust Corp.,* 306 Ark. 173, 811 S.W.2d 765 (1991); *Reisig v. Resolution Trust Corp.,* 806 P.2d 397 (Colo.App.1991); *Nob Hill at Welleby, Ltd. v. Resolution Trust Corp.,* 573 So.2d 952 (Fla.App. 4th Dist.1991); *Resolution Trust Corp. v. Whitley,* 800 S.W.2d 150 (Mo.App.1990); *Hall v. Duncan Savings & Loan,* 820 P.2d 1360 (Ok.App.1991).

■ In addition to being inconsistent with authority specific to FIRREA, exclusive federal jurisdiction would be inconsistent with more general authority. There is

[a] long standing rule in the Federal Courts that jurisdiction is determined at the time the suit is filed and *after vesting, cannot be ousted by subsequent events, including action by the parties.*

*F. Alderete Gen. Contractors, Inc. v. United States,* 715 F.2d 1476, 1480 (Fed. Cir.1983) (emphasis added); *see also Praxis Properties, Inc. v. Colonial Sav. Bank,* 947 F.2d 49, 63 n. 14 (3rd Cir.1991) (" '[i]t is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint' ") (quoting *Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 392 n. 12 (3rd Cir.1991) *cert. denied —— U.S. ——,* 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). Measuring jurisdiction as of the time of filing is consistent with traditional authorities. *See* 21 C.J.S. *Courts* §§ 56 ("[j]urisdiction of a court over the subject matter of a case is commenced with the filing of a complaint * * * which shows the case to be within the general class of cases which the court has jurisdiction to hear and determine"); 72 ("[a]s a general rule, jurisdiction once acquired is not defeated by subsequent events, even though they are of such a character as would have prevented jurisdiction from attaching in the first instance") (1990) (footnotes omitted); 20 Am. Jur.2d *Courts* §§ 142 ("acquisition of jurisdiction ordinarily depends on the facts existing at the time of the commencement of the suit as they appear from the complaint"); 148 ("[o]rdinarily a court that has acquired jurisdiction of a case will not be ousted by subsequent events in the course of its proceedings, even if such subsequent events are of such a character as would have prevented jurisdiction from attaching in the first instance") (1965) (footnotes omitted). This general principle is employed in Minnesota. *See Jasperson v. Jacobson,* 224 Minn. 76, 82–83, 27 N.W.2d

cording to FIRREA's legislative history, the *Coit* concerns, rather than exclusive federal jurisdiction, were the mischiefs to which Congress addressed itself in the FIRREA claims procedure. *See* H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 418–19 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214–15. Thus, congressional intent in enacting FIRREA was to create legislation actually granting the power to adjudicate claims against insol-

vent savings and loan associations and which had time limits which were sufficiently clear to avoid the "black hole from which [claims] may not [have emerge[d]" under FIRREA's predecessor. *See Coit* 489 U.S. at 586, 109 S.Ct. at 1375. These reasons are separate and distinct from that of granting federal courts exclusive jurisdiction over all claims against RTC.

788, 793 (1947) (filing a proper petition gives court subject matter jurisdiction).

■ RTC's claim that the state court lost jurisdiction when appellants failed to exhaust administrative remedies is inconsistent with the idea that events occurring after attachment of jurisdiction do not divest a court of a previously and correctly acquired ability to decide a case. Thus, we conclude state courts are not automatically deprived of jurisdiction over cases legitimately filed in state court by a subsequent failure to exhaust RTC's administrative remedies.

Other authority is mixed. *See e.g., Resolution Trust Corp. v. Mustang Partners,* 946 F.2d 103, 106 (10th Cir.1991) ("No interpretation [of FIRREA] is possible which would excuse [the administrative claims procedure] requirement for creditors with suits pending [before appointment of a receiver]"); *United Bank v. First Republic Bank Waco,* 758 F.Supp. 1166, 1168 (W.D.Tex.1991) ("FIRREA's administrative [claims] scheme applies to pending actions"). Under these and similar authorities, and assuming proper notification of the "required" administrative proceedings,[2] appellants' failure to pursue administrative remedies would be a jurisdictional defect.

## II.

On appeal from summary judgment, we determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. Also, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

■ A senior lien holder may not harm a junior lien holder's rights. *See Model Home Bldg., Inc. v. Turnquist,* 258 Minn. 53, 55, 102 N.W.2d 717, 719 (1960) (a mortgagee cannot "voluntarily enlarge the mortgage indebtedness to the detriment of

subsequent lienholders without their consent"); *Gandrud v. Hansen,* 210 Minn. 125, 134, 297 N.W. 730, 735 (1941) (" 'Parties, by a private arrangement between themselves, cannot prejudice the rights of subsequent encumbrances' ") (citation omitted). Appellants maintain that as fee owners, they were not bound by Scottland's decisions regarding the proceeds of the Healey/Ramme sale. Appellants argue that because not applying the sale's proceeds to the mortgage harmed their subordinated interest, the subordination clause was voided, rendering appellants' interest superior to Greenhaven's. Therefore, appellants continue, all Greenhaven had to mortgage was its contract for deed vendee's interest, which appellants canceled when Greenhaven and Scottland filed bankruptcy. Thus, appellants conclude, Midwest had no interest to foreclose. We disagree.

Appellants' argument assumes appellants did not mortgage their fee interest to Midwest. The mortgaged interests included:

All right, title and interest in and to that certain contract for deed estate covering the real estate [in question here], * * * *together with all of the estate, title and interest which* [appellants] and [Greenhaven] *may now have or hereafter acquire in and to the real property conveyed therein.*

(Emphasis added.) Consistent with a mortgage of appellants' fee interest, in the event of default, Greenhaven authorized Midwest to "sell the Premises at public auction and convey the same to the purchaser in *fee simple."* (Emphasis added.) These provisions require the inference that appellants mortgaged their fee interest.

■ Appellants' argument also assumes the Healey/Ramme sale proceeds were diverted in a manner inconsistent with the mortgage. Again, we must disagree. Under the subordination agreement:

---

**2.** FIRREA's administrative timing limitations are measured by the date RTC sends notice to creditors that RTC is the receiver for a failed institution and that creditors must thereafter file their claims with RTC. *See* 12 U.S.C.A. § 1821(d)(3)(B)(i); (d)(5)(A)(i); (d)(6)(A) (West 1989). We note that while RTC alleges it sent this notice to appellants, appellants dispute this and the record contains no evidence on the subject.

*[Appellants] join in this Mortgage * * * subjecting all of [appellants'] right, title and interest in and to the Premises,* whether now or hereafter acquired, to the lien of and to the performance of *each of the* terms, covenants and *provisions of this Mortgage.*

(Emphasis added.) One mortgage provision is a "release formula" requiring "release payments" against the mortgage. Under another mortgage provision, however:

Without affecting the liability of any party liable for payment of any Indebtedness Secured Hereby * * * and without affecting the rights of [Midwest] with respect to any security not expressly released in writing, [Midwest] *may, at any time, and without notice to or the consent of* [Greenhaven] or *any party in interest with the Premises* or the Note * * * (d) release or otherwise deal with any property, real or personal, including any or all of the Premises, *including making partial releases of the Premises.*

(Emphasis added.) Under the second provision, Midwest had the power to unilaterally release land from the mortgage. Thus, the question becomes whether the Healey/Ramme release was made under the "release formula" or the unilateral release provision.

Noting that the prerequisites for application of the "release formula" to the Healey/Ramme sale were not present, the trial court concluded that the release was made pursuant to Midwest's unilateral ability to alter aspects of the mortgage. This is consistent with the record. Not only was application of the Healey/Ramme sale proceeds inconsistent with the "release formula," but Scottland's chief financial officer stated:

I knew and understood that the release formula contained in the mortgage with [Midwest] would not be used with respect to the Healey/Ramme sale proceeds.

Similarly, a Midwest loan officer indicated Midwest was involved in meetings addressing whether "[Midwest] would entertain the [Healey/Ramme] sale." Such meetings would be inconsistent with the "release formula" under which Midwest did not have discretion to refuse a requested release if the prerequisites were met.

Finally, that the sale was pursuant to the unilateral provision is consistent with statements by Midwest's loan officer, that while sale proceeds are generally applied toward a mortgage, if the mortgagee is confident the remaining debt did not exceed the remaining security, alternative applications of the proceeds may be discussed. According to the loan officer, at the time Scottland directed application of the sale proceeds to non-mortgage debts, Midwest assessed the remaining property "in the neighborhood of $2 million" as compared with $1.1 million due on the mortgage.

As neither Midwest nor Scottland contemplated application of the "release formula" to the Healey/Ramme sale, we cannot say payments needed to be made against the mortgage pursuant to the unapplied formula.

### III.

■ Appellants also allege that the foreclosure is invalid because of an overstatement of the amount due and an inadequate bid at the foreclosure sale.

Generally,

a foreclosure sale free from fraud[3] or irregularity will not be held invalid for inadequacy of the price. The mortgagor has a year in which to redeem for the price for which the property is bid in. * * * In the cases where it seems to have been held otherwise there have been other elements involved that induced the court to hold the sale invalid.

*Kantack v. Kreuer,* 280 Minn. 232, 240, 158 N.W.2d 842, 848 (1968); *see also Sprague Nat'l Bank v. Dotty,* 415 N.W.2d

---

**3.** Appellants' allegation of fraud is academic. Failure to particularly plead fraud justifies summary judgment against the party alleging it. *See* Minn.R.Civ.P. 9.02; *Westgor v. Grimm,* 318

N.W.2d 56, 58 (Minn.1982); *Stubblefield v. Gruenberg,* 426 N.W.2d 912, 914–15 (Minn.App. 1988). Here, neither of appellants' complaints specifically pleaded fraud.

725, 727 (Minn.App.1987), *pet. for rev. denied* (Minn. Jan. 28, 1988); *In re Petition of Strawberry Commons Apartment Owners Ass'n*, 356 N.W.2d 401, 403 (Minn. App.1984).

■ Under *Kantack*, a low foreclosure bid is not independently sufficient to void the foreclosure sale. *See, e.g., Sprague*, 415 N.W.2d at 727 (summary judgment in favor of mortgagee against mortgage guarantor reversed noting that while redemption will protect a mortgagor against a bad faith low bid, it will not necessarily protect guarantors); *Strawberry Commons*, 356 N.W.2d at 405 (setting aside foreclosure sale on basis of inadequate bid affirmed with the observation that because owners of foreclosed interest did not have notice of foreclosure, redemption right was "hollow"); *see also Zetah v. Issacs*, 428 N.W.2d 96, 103 (Minn.App.1988).

Appellants argue that the additional harm here was a lack of bidders resulting from the excessively stated amount due on the mortgage. Assuming the amount due was excessively stated, that bidders were deterred, and that a higher bid for the property would have been received, and ignoring whether such assumptions are unduly speculative, appellants' argument is that they were prohibited from paying a larger sum to redeem the property. We see no harm under these circumstances.

### DECISION

Appellants' action against Midwest was initiated in state court prior to RTC's appointment as Midwest's receiver. Therefore, the state courts have jurisdiction to decide the case. Because appellants mortgaged their interest to Midwest, and because application of the Healey/Ramme sale proceeds was not inconsistent with the mortgage, Midwest was entitled to foreclose the mortgage. Finally, assuming Midwest's bid at the foreclosure sale was low, without additional harm, we will not invalidate the sale.

*Affirmed.*