**F.D.I.C., successor in interest of First Exchange Bank of St. Louis,[1] Plaintiff–Respondent,**

v.

**Floyd C. WARMANN, and Stephen C. Bradford, Defendants–Appellants.**

No. 61952.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 24, 1993.

Ilona S. Leavitt, Laurence D. Mass, Clayton, for defendants-appellants.

---

**1.** After notice of appeal, Federal Deposit Insurance Corporation (F.D.I.C.), as Receiver for First Exchange Bank of St. Louis, petitioned our court for an order substituting F.D.I.C. as respondent. Without objection said motion was granted.

Michael A. Campbell, Kieran J. Coyne, Clayton, for plaintiff-respondent.

Before PUDLOWSKI, P.J., and KAROHL and GRIMM, JJ.

PER CURIAM.

This is an appeal from an order for summary judgment entered by the Circuit Court of St. Louis County. Appellants, Floyd C. Warmann and Stephen C. Bradford, assert on appeal that genuine issues of material fact exist which preclude the entry of summary judgment and further, that affidavits submitted by First Exchange Bank of St. Louis (Bank) in support of its motion for summary judgment fail to controvert all of appellants' allegations. Respondent, F.D.I.C., contests these allegations and raises a jurisdictional defense claiming the courts of this state no longer have jurisdiction over the case because Bank is currently in FDIC receivership. We find that the Missouri State Courts do have continuing jurisdiction and affirm the judgment of the trial court.

### I. *Facts*

On April 11, 1991, Bank filed suit against appellants seeking a deficiency judgment against appellant Warmann's promissory note, dated March 28, 1989, for $1,050,-000.00 in principal; appellant Bradford's promissory note, dated March 28, 1989, for $1,050,000.00 in principal; appellant Warmann's promissory note, dated December 10, 1990, for $64,922.39 in principal; appellant Bradford's separate promissory note, dated December 10, 1990, for $143,854.50; and appellant Warmann's guarantee of $52,162.25 of Bradford's debt. On March 28, 1989, appellants executed a deed of trust on land owned by the two of them in the City and County of St. Louis in the sum of $2,100,000.00. On April 2, 1991, Bank purchased the property at a foreclosure sale for $1,600,000.00.

In June 1991, appellants filed their answer which included counterclaims.

On November 7, 1991, Bank filed its motion for summary judgment. On November 18, 1991, a hearing was held on Bank's motion for summary judgment. At the hearing, appellants were granted leave and additional time to file suggestions in opposition to the motion. The trial court directed in its November 18 order that the motion for summary judgment would be taken upon the filing of the briefs.

On December 16, 1991, appellants submitted an amended answer and counterclaims along with their suggestions in opposition to Bank's motion for summary judgment. Appellants filed no affidavits in opposition to Bank's motion for summary judgment. On December 27, 1991, Bank filed a reply in support of its motion for summary judgment. The motion for summary judgment was taken as submitted per the court's order of November 18.

On January 16, 1992, at a conference, the trial court ordered Bank to prepare an order granting summary judgment in favor of Bank. On January 28, 1992, appellants submitted a motion to file their affidavits and their second amended answer, which contained alleged affirmative defenses and counterclaims, along with a motion urging the court to reconsider the motion for summary judgment. The court in a separate order denied said motion. On the same date, the court granted leave for appellants to file their amended answer and counterclaims and then granted Bank's motion for summary judgment. The summary judgment order provided that appellant Warmann owed $459,299.12 and appellant Bradford owed $487,850.59.

On February 3, 1992, Bradford and Warmann filed Bradford's affidavit. On February 11, 1992, appellants filed a motion for rehearing and reconsideration. On April 30, 1992, the trial court denied the motion for rehearing. On May 1, 1992, appellants filed a notice of appeal with the trial court. On May 7, 1992, Bank was determined by the Commissioner of Finance of the State of Missouri to be insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed as Bank's receiver pursuant to 12 U.S.C. section 1821(c)(2)(A)(ii).

Additional facts will be developed as necessary.

## II. *Jurisdiction*

Before reaching the merits of the appeal, it is necessary to consider respondent's reservations regarding the continuing jurisdiction of the state courts to hear this matter in light of Bank's receivership status. As noted above, the case at bar was reduced to final judgment and notice of appeal was filed in the trial court before Bank entered receivership. The narrow question we address here is whether, once a bank enters receivership with the FDIC, the federal courts have exclusive jurisdiction over prereceivership claims which divests the state court system of jurisdiction to hear claims that were initiated in state court prior to receivership.

Respondent's point, raised for the first time on appeal, challenges the subject matter jurisdiction of both the trial and appellate court to hear this case. "The only issues that are inherent and remain in every appeal are questions concerning subject matter jurisdiction and the sufficiency of the pleadings to state a claim upon which relief can be granted or a legal defense to a claim." *Grippe v. Momtazee*, 696 S.W.2d 797, 798 (Mo. banc 1985); Rule 84.13. Thus, respondent's jurisdictional defense is properly before this court.

In order to better understand respondent's contention, a brief overview of the recent law concerning banks in FDIC receivership is useful. In 1989, the United States Congress enacted the Financial Institutions Reform and Recovery Enforcement Act (FIRREA). Pub.L. No. 101–73, 103 Stat. 183 (1989). FIRREA was enacted in response to the numerous financial problems experienced by the savings and loan industry in recent years. FIRREA's purpose was to regulate and remedy, through numerous, comprehensive provisions, problems with the previously existing regulatory scheme. *See Rosa v. Resolution Trust Corporation*, 938 F.2d 383, 388 (3d Cir. 1991) (citing H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 291–312, reprinted in 1989 U.S.Code Cong. & Admin.News 86, 87–108

(detailing history and purposes of FIRREA)). One of FIRREA's purposes was to form a new corporation, known as the Resolution Trust Corporation (RTC), to administer the affairs of failed thrift institutions. *Id.;* 12 U.S.C. § 1811 note (West 1989). The RTC took over the functions of the Federal Savings and Loan Insurance Corporation (FSLIC) with respect to handling failed savings and loan institutions.

As part of the new regulatory scheme under FIRREA, the FDIC coordinates the administrative claims procedure in which claimants are required to submit their claims before seeking judicial review. *See Marquis v. Federal Deposit Ins. Corp.*, 779 F.Supp. 6, 7 (D.N.H.1991) (describing the administrative claims procedure). After claimants have exhausted their administrative claims, the statute specifies that a claimant may seek administrative review of a claim or, alternatively, may file an action in the proper federal court. 12 U.S.C. § 1821(d)(6)(A)(ii). During the pendency of the administrative process, all claims against the financial institution are suspended. The statute, however, specifies that pre-receivership claims, which are suspended during the administrative process, may be continued after that process is complete. *Id.* On this basis, we believe, pre-receivership actions filed in state court are properly continued after receivership. Recent court decisions provide that the federal court's jurisdiction is not exclusive and does not preclude state court jurisdiction over pre-receivership cases.[2] *Berke v. Resolution Trust Corp.*, 483 N.W.2d 712 (Minn.App.1992); *Armstrong v. Resolution Trust Corp.*, 234 Ill.App.3d 162, 175 Ill.Dec. 195, 599 N.E.2d 1209 (1992); *Marquis v. Federal Deposit Ins. Corp.*, 779 F.Supp. 6 (D.N.H.1991).

Respondent's contention that the federal courts have exclusive jurisdiction over pre-receivership claims is inconsistent with the language contained in FIRREA concerning continuing pre-receivership actions. The statute provides in part:

---

**2.** We do not decide whether federal jurisdiction is exclusive over cases commenced after a bank

or thrift has entered receivership.

[A claimant] may request administrative review of the claim ... or file suit on such claim (*or continue an action commenced before the appointment of a receiver*) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A) (emphasis added). The parenthetical language discussing the continuation of actions indicates that the statute contemplates the continuing of pre-receivership actions. *See Berke, supra,* at 714; *Marquis, supra,* at 7. If a pre-receivership state court action had to be dismissed after the receivership, then it could not be "continued" as the statute requires, but rather, would need to be refiled in federal court. *See Berke, supra.* Other portions of the FIRREA act support the position that the federal courts do not have exclusive jurisdiction over pre-receivership cases. Most notably, 12 U.S.C. section 1821(d)(5)(F)(ii) which provides:

Legal effect of filing

(i) * * * *

(ii) No prejudice to other actions

Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.

Once again, it is clear that the statute contemplates the continuation of state pre-receivership cases.

For the forgoing reasons, we conclude that state courts have continuing jurisdiction to hear the case at bar.

### III. *Appeal*

On appeal, appellants raise two points. First, that material issues of fact exist which preclude summary judgment, and second that Bank, in its motion for summary judgment, failed to controvert all of the allegations contained in the pleadings. We find that appellants failed to file an affidavit or other evidence controverting Bank's motion for summary judgment both at the time of the hearing and in the additional time granted to file such evidence after the hearing.

If the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, its motion for summary judgment must be sustained. Rule 74.04(c). The crucial time period for an opposing party to file affidavits controverting a motion for summary judgment is any time "[p]rior to the day of the hearing." We find that at the time of the hearing, appellants had failed to present affidavits or other evidence controverting Bank's motion for summary judgment and that appellants additionally failed, within the extra time allotted by the trial judge after the hearing, to file evidence controverting Bank's motion.

On November 18, 1991, the hearing on Bank's motion for summary judgment was held. An order issued by the trial court, dated November 18, 1991, provides:

Cause submitted without argument for ruling upon Plaintiff's Motion for Summary Judgment, Motion to Dismiss Defendants' Counterclaims, and Motion for More Definite and Certain Statement. Plaintiff granted five (5) days in which to file supporting suggestions or brief, and Defendants granted fifteen (15) days after said filing to file Defendants' suggestions or brief; thereafter, Plaintiff granted ten (10) days in which to file a reply, if necessary. Cause to be submitted upon the filing of above briefs.

The last sentence of the order was handwritten. The trial court granted appellants additional time to file their suggestions in opposition and directed that the cause would be submitted on the briefs. On December 16, 1991, appellants filed their suggestions in opposition to Bank's motion for summary judgment. No affidavits were affixed to the motion. On December 27, 1991, Bank filed a reply in support of its motion.

On January 16, 1992, the trial court ordered Bank to prepare an order granting summary judgment in Bank's favor. On January 28, 1992, appellants attempted to file affidavits, a second amended answer and counterclaims, and a motion for reconsideration of Bank's motion for summary judgment. The trial court denied leave to file these documents [3] and granted Bank's motion for summary judgment. Our review is limited to that evidence which was properly before the trial court. *United Postal Savings v. Norbob Enterprises,* 792 S.W.2d 898, 901 (Mo.App.E.D.1990).

It is apparent that there was no evidence before the trial court to controvert Bank's motion for summary judgment, either at the hearing on November 18 or within the time allotted thereafter to file opposing suggestions and affidavits. As such, Bank's motion for summary judgment was properly granted.

Appellants argue that "newly discovered evidence" became available to them, presumably sometime in late January 1992, because of proceedings against Bank in another action. All of the conditions about which appellants complain were present at the signing of the promissory note on March 28, 1989. Appellants request for leave to file amended counterclaims were properly denied, and appellants cannot now rely on allegations contained in those documents. *Norbob, supra.*

The judgment of the trial court is affirmed.

---

**3.** Appellants do not challenge the trial court's refusal to grant leave to file these documents.