**Ronnie VAIL, Richard A. Dixon, Bruce Lillquist, Larry Stanley, Daryl Y. Cooper, and Timothy C. Gartland, on behalf of all others similarly situated**

v.

**Jesse BROWN, or his successor, Secretary of the Department of Veteran's Affairs [1].**

**No. 3–89–CV–609.**

United States District Court, D. Minnesota, Third Division.

Jan. 14, 1994.

---

1. Defendant Jesse Brown, the current Secretary of the Department of Veteran's Affairs, is substituted as defendant for Edward J. Derwinski, pursuant to Rule 25(d), Federal Rules of Civil Procedure.

Douglas Paul Radunz, Radunz Law Office, Minneapolis, MN and David A. Leen, Leen & Moore, Seattle, WA, for plaintiffs.

Lonnie F. Bryan, U.S. Atty. Office, Minneapolis, MN, for defendant.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on cross-motions for summary judgment, and on plaintiffs' motion for implementation of the Eighth Circuit's directives in *Vail v. Derwinski*, 946 F.2d 589 (8th Cir.1991), *amended by*, 956 F.2d 812 (8th Cir.1992).[2] The Court heard oral argument on May 7, 1993. The parties have subsequently engaged in negotiations and filed additional submissions with the Court.

### I. *Background*

This class action [3] was commenced on September 15, 1989, by military veterans who purchased homes in Minnesota under the Department of Veteran's Affairs ("VA") home loan guarantee program. *See generally*, 38 U.S.C. §§ 3701–3751. The plaintiff class consists of veterans who either defaulted on their own VA-guaranteed loans, or sold their homes to buyers who defaulted after assuming those mortgages. This action challenges the VA's exercise of its indemnity rights following the use of Minnesota's statutory non-judicial foreclosure procedures, in the absence of prior notice to the affected veteran.

In 1990, the district court [4] granted summary judgment in favor of the plaintiffs, holding that the VA was "without authority to enforce deficiency judgments against members of the plaintiff class for loan guaranty payments made to mortgage lenders following non-judicial foreclosure of Minnesota real estate." *See Vail v. Derwinski*, 742 F.Supp. 1039, 1043 (D.Minn.1990). On appeal, the Eighth Circuit modified the district court's order. The Circuit Court held that the VA may exercise its indemnity rights against a veteran after non-judicial foreclosure, but only after the VA has made "a good faith attempt to provide reasonable personal notice to the [veteran] of the foreclosure sale." *Vail*, 946 F.2d at 594. The court held that failure to give such notice was a violation of the Due Process Clause of the Fifth Amendment.

Plaintiffs now seek an order (a) implementing the Eighth Circuit's directive, and (b) establishing a system for repayment of funds by the VA to class members whose due process rights were violated by the VA's failure to provide adequate notice prior to non-judicial foreclosure. Plaintiffs also request prospective relief in the form of a permanent injunction.

### II. *The VA Home Loan Guarantee Program*

The VA provides housing assistance to qualified veterans by providing a government guaranty for home loans made to veterans by private lenders. In the event of a default on these mortgages by a veteran or a subsequent purchaser, the lender is required to give the VA at least 30 days' notice before foreclosing on the property. 38 U.S.C. § 3732(c)(3) (1991); 38 C.F.R. § 36.4317

---

**2.** The 1992 modification added a footnote citing 38 U.S.C. § 3732(a)(4)(A). Section 3732(a)(4)(A) directs the Department of Veteran's Affairs ("VA") to notify a veteran of default on a VA guaranteed mortgage.

**3.** By stipulation of the parties, and by Order dated August 21, 1990, the class was defined as:
All individuals eligible for home loan guarantees or insurance proceeds pursuant to Title 38, United States Code, Chapter 37, against whom the United States or its agencies have asserted or will assert a claim pursuant to 38 CFR § 36.4323(e) or indemnity agreement, which claim has been or will be generated because of a claim paid by the United States to a lender who submitted such claims to the United States because of a mortgage foreclosure conducted in the State of Minnesota subject to the anti-deficiency provisions of Minnesota law including but not limited to

Minnesota Statutes § 582.30 or former § 580.23 subd. 1, but excluding any claims based upon foreclosure of mortgages closed after December 31, 1989. This class will include the following subclasses:
SUBCLASS # 1: Those individuals, included in the above class, against whom a final judgment has been entered in a court of law on such claim.
SUBCLASS # 2: Those individuals, included in the above class, from whom the VA has collected monies based upon a claim under 38 CFR 36.4323(e) or written indemnity agreement, by way of voluntary payment, offset of benefits, wages, tax refunds, or other collection efforts.

**4.** The Honorable Edward J. Devitt, United States District Judge.

(1993).[5] The VA then has 15 days to instruct the lender how to proceed. 38 C.F.R. § 36.-4324 (1993). The VA may either purchase the loan, or advise the lender to go forward with foreclosure. 38 U.S.C. § 3732(c)(3) (1991). Should the VA direct the lender to proceed with foreclosure, the lender must follow the VA's instructions as to the appropriate method and timing. 38 C.F.R. § 36.-4324(f) (1993). Foreclosure of the property is conducted in accordance with state law. 38 U.S.C. § 3720(a)(6) (1991). Minnesota law allows both judicial and non-judicial foreclosure. See Minn.Stat. §§ 580.01, et seq., and 581.01, et seq. (1988).

The VA must reimburse the lender for certain losses, or deficiencies, following the foreclosure sale. 38 U.S.C. § 3732(c) (1993); 38 C.F.R. § 36.4321 (1993). The veteran, in turn, is obligated to reimburse the VA for any sum paid by the VA to the private lender. 38 C.F.R. § 36.4323(e) (1993). If a veteran allows a purchaser to assume the VA-guaranteed mortgage, and the purchaser defaults, the veteran remains liable for the mortgage debt and any consequent deficiency, unless the veteran obtained a release from the VA prior to the sale of the property. See 38 U.S.C. § 3713 (1993); 38 C.F.R. § 36.-4323(f) (1993).[6] The amount of the deficiency chargeable to the VA on its guaranty, and therefore recoverable from the veteran, is the difference between the sale price of the property and the amount of the loan, up to the amount of the guaranty. 38 U.S.C. § 3732(c) (1991). Once the debt is established, the VA deducts the amount of such debt from funds owed to the veterans by the United States. See Vail, 946 F.2d at 590.

Section 3732(a)(4)(A), Title 38, United States Code, directs the VA, upon receiving notice of the lender's intent to foreclose, to "provide the veteran with information and, to the extent feasible, counseling regarding ... alternatives to foreclosure ... including possible methods of curing the default, conveyance of the property to the [VA] by means of a deed in lieu of foreclosure ... and what the [VA's] and the veteran's liabilities would be with respect to the loan in the event of foreclosure." 38 U.S.C. § 3732(a)(4)(A) (1993) (effective March 1, 1988).

Before the VA can collect a debt arising from its guaranty payment, a veteran may challenge the existence or amount of the debt, or the veteran may request a waiver on the ground that he or she is not materially at fault, or that collection would violate equity and good conscience. See 38 C.F.R. §§ 1.911, 1.912 (1993). The veteran is entitled to a hearing on the waiver request, and may appeal an adverse decision to the Board of Veterans Appeals. Id. The veteran may then seek further review before the Court of Veterans Appeals and the Court of Appeals for the Federal Circuit. 38 U.S.C. §§ 7252, 7293 (1993). If a waiver is denied, the veteran may seek to compromise the debt with the VA. 38 C.F.R. § 1.970 (1993).

With this overview in mind, the Court now turns to the question at hand.

### III. Analysis

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court finds that no outstanding issues of material fact preclude summary judgment in this action.

The Fifth Amendment requires that, before a federal agency may take an action which affects a constitutionally-pro-

---

5. The relevant VA regulations were recently amended to require the lender to provide notice of its intent to foreclose to "the original veteran-borrower and other liable obligors by certified mail within 30 days after such notice is provided to the Secretary in all cases in which the current owner of property is not the original veteran-borrower." 38 C.F.R. § 36.4317(c) (1993).

6. VA Form 26–1802a, "Application for Home Loan Guaranty," completed and signed by each veteran-borrower, provides, in relevant part:
   As a GI home loan borrower you will be legally obligated to make the mortgage payments called for by your mortgage loan contract. The fact that you dispose of your property after the loan has been made WILL NOT RELIEVE YOU OF LIABILITY FOR MAKING THESE PAYMENTS.

tected interest in life, liberty, or property, "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). Such notice is to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Vail*, 946 F.2d at 593 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)); *see also Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983). It is "fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes*, 407 U.S. at 80, 92 S.Ct. at 1994 (citing *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). "Notice by mail or other means as certain to ensure actual notice is a minimum precondition to a proceeding which will adversely affect the liberty or property interest of *any* party ... if its name and address are reasonably ascertainable." *Mennonite Board*, 462 U.S. at 800, 103 S.Ct. at 2712 (emphasis provided).

█ The Court recognizes that "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). To determine what process is due before official action is taken, the Court weighs several factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990) (quoting *Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903).

█ A veteran-borrower has a protectible interest in attempting to avoid a determination that foreclosure is necessary, and in assuring that fair value is received for the property at the foreclosure hearing. *See Vail*, 946 F.2d at 593; *Boley v. Brown*, 10 F.3d 218 (4th Cir.1993). Accordingly, on review of this case, the Eighth Circuit held that the VA must make a good faith attempt to provide reasonable personal notice of the foreclosure sale to the veteran-borrower before it may recover under its indemnity contract. Plaintiffs argue that reasonable notice requires that the veteran be personally served in advance with notice of the date and time of the foreclosure sale. Plaintiffs also urge that the VA must either hold an administrative hearing at which a veteran may present his or her objections, or direct the private lender to conduct a judicial foreclosure. Plaintiffs also seek an order from this Court which would allow an affected veteran to be advised by legal counsel at this proposed suggested hearing.

The government responds that it has made a "good faith attempt to provide reasonable personal notice" to the plaintiffs. *See Vail*, 946 F.2d at 594. In their view they have done so, because the Minnesota Supreme Court has held that Minnesota's non-judicial foreclosure statute is constitutional. *See Guidarelli v. Lazaretti*, 305 Minn. 551, 233 N.W.2d 890, 892 (1975). The Court cannot agree. As a preliminary matter, this argument wholly ignores the Eighth Circuit's holding in *Vail*. Furthermore, the simple fact is that, while a procedure may be constitutional, such a determination does not respond to the question of whether adequate notice of the use of the procedure and its consequence has been given.

Alternatively, the government argues that even if the non-judicial foreclosure statutes standing alone do not satisfy due process requirements, those statutes, combined with now-existing federal statutes and regulations, collectively satisfy due process. In the government's view, current notice procedures, which advise the veteran-borrower of the pendency of foreclosure and its consequences, are sufficient.

█ The Court finds that existing VA procedures and regulations satisfy due process.

The notification currently provided by the VA to the veteran-borrower advises the veteran of the pendency and probability of the foreclosure action, as well as his or her potential liability under the guaranty contract. Veterans in possession of the mortgaged property are provided VA Form 26–8761, "Notification to Borrower of Default," which advises a veteran-borrower that the mortgage loan is in default.[7] The veteran is then provided a VA Form 26–8762, "Notice to Borrower Regarding Foreclosure of Mortgage," which advises the veteran-borrower that the loan is in default, and that the holder of the mortgage intends to foreclose on the property.[8]

A veteran who transferred his or her property is sent VA Form 26–251, the so-called "Whitney letter," [9] which notifies the veteran that the present owner of the mortgaged property is in default, and that foreclosure appears probable.[10] These notification procedures provide notice of foreclosure and its attendant consequences at "a meaningful time and in a meaningful manner." *See Fuentes*, 407 U.S. at 80, 92 S.Ct. at 1994.

7. VA Form 26–8761 reads:
   The representative of the holder of your mortgage has notified us that the above numbered loan is in default.
   It is very important that you see the representative immediately, if possible....
   If you fail to pay the past-due installment promptly or make other satisfactory arrangements with the holder, no doubt foreclosure action will be started. In that event you will lose your property. Also, since we guaranteed payment of a portion of the loan, we may be called upon to pay a claim if the property does not sell for enough at the sale to pay the loan balance plus foreclosure costs. If we have to pay a claim, you may be liable to us for payment of the claim....

8. VA Form 26–8762 provides, in pertinent part, as follows:
   We have been notified by the holder of the mortgage on your property that your loan is in default and that the holder intends to foreclose.
   We are sure that you recognize the importance of taking care of the delinquent payments on your loan without delay. First, unless you are able to make satisfactory arrangements for curing the default, you will lose your property and your credit will be seriously affected. In addition, if the Government is required to pay a claim on the loan, any amount paid to the holder in your behalf will represent a debt which you owe the government. This is true even though the holder of your loan does not or may not be able to hold you personally liable for any deficiency existing after completion of the foreclosure sale. Under the law we are required to make every effort to collect an indebtedness arising from the payment of a claim on a GI loan.
   We urge you to contact or write your mortgage holder immediately and make arrangements satisfactory to the holder to bring your account up to date. Should you be unable to make arrangements with the holder to reinstate your loan, and would like to discuss the default with us, please write or visit with us at the above address, or telephone us at the number shown below. We may be able to help you work out a repayment program acceptable to the mortgage holder....

9. In *United States v. Whitney*, 602 F.Supp. 722 (W.D.N.Y.1985), the court held that the due process clause barred the VA from recovering a deficiency when the VA had not made a reasonable attempt to provide the veteran with personal notice of the foreclosure sale.

   Although the plaintiffs raised a due process issue before the district court in the present case, it is notable that the notice issue was not argued on appeal, the district court having granted relief on an alternate theory. *See Vail*, 946 F.2d at 594. Consequently, the Eighth Circuit did not consider the constitutional sufficiency of VA Forms 26–8761 and 26–8762, or the Whitney letter.

10. The "Whitney letter" states in full:
    We have been informed by [holder] that [present owner] is delinquent with the payments on his/her loan. Foreclosure appears probable on his/her property located at [address].
    The original loan was guaranteed or insured by the Veteran's Administration. Our records show that you are a former owner of the property and an obligor who is liable on the loan. If, as the result of foreclosure, or otherwise, we pay a claim under the guaranty, you may be indebted to the United States for the net amount of such payment. This is true even though the holder of the loan does not or may not be able to hold you personally liable for any deficiency existing after the completion of the sale. Under the law we are required to make every effort to collect an indebtedness arising from the payment of a claim on a GI loan.
    We recommend that you get in touch with the holder of the loan and the present owner of the property in an effort to cure the default and avoid foreclosure of the loan. You may consider it advisable to consult a lawyer for advice as to what you can and should do. If you propose to do anything to protect your interests, it must be done promptly.

■ The plaintiffs' suggestion of notice of the exact time and place of the foreclosure is overly simplistic. The reality of legal practice and the vagaries of the financial system make such precision unrealistic. Any continuance or delay in a scheduled foreclosure would presumably require new notice and recommence the notice procedure. The Court cannot blind its eye to the fact that in the real commercial world, a foreclosure sale may not take place on the exact date and time when the action is contemplated. The issue for concern by the courts—and the real matter of concern for the veteran—is practical, timely, usable, notice of the fact of an impending foreclosure with its attendant risks and consequences.

To accommodate this reality, the Court directs that the VA Form 26–8762, or the Whitney letter, henceforth be modified to indicate a two-week period during which a foreclosure proceeding is contemplated to be conducted, and that it be sent to the veteran at his or her last known address by commercially reasonable means, which includes registered mail. Such notice shall be sent not more than 60 days, nor fewer than 20 days, before the anticipated foreclosure proceeding.

The Court makes clear, however, that while the current VA Form 26–8762 and Whitney letter do not contain notice of a two-week window for the foreclosure sale, the VA is deemed to have complied with due process if it made a good faith attempt to send such forms as currently written.

■ In many circumstances, the Due Process Clause also requires some kind of a hearing before the state may deprive a person of liberty or property. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 18, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978); *Fuentes,* 407 U.S. at 80–84, 92 S.Ct. at 1994–96. The Court finds that a hearing is not, however, required in this case. The notice given, under the terms of this Order, is fully sufficient to permit the veteran to participate in the foreclosure sale and to exercise his or her pre-foreclosure options. In the Court's view,

these procedures satisfy the requirements of the Fifth Amendment.

IV. *Refunds*

■ The plaintiffs argue that all of the class members from whom money was collected or benefits withheld are entitled to relief. Plaintiffs assert that the VA has failed to establish that any class member received appropriate notice of the foreclosure sale, or had sufficient opportunity for a hearing. In the plaintiffs' view, the Court should therefore declare all former indemnity claims void, and order that any funds collected be returned to the plaintiffs with pre-judgment and post-judgment interest. Plaintiffs suggest that the Court adopt an implementation plan similar to that set forth in *Whitehead v. Derwinski,* 904 F.2d 1362 (9th Cir.1990), *overruled by Carter v. Derwinski,* 987 F.2d 611 (1993). The government responds that only a portion of the class may be entitled to relief. The VA claims that it sent VA Form 26–8762, or a Whitney letter, to some class members, and that others received actual notice of the foreclosure sale by other means. According to the VA, these individuals would be ineligible for relief. The Court agrees.

The Court concludes that any veteran to whom the VA sent appropriate notice is not entitled to recovery. Moreover, while the VA asserts that certain class members received actual notice of foreclosure, the Court has no evidence from which to determine the precise nature or the adequacy of said notice anent the veteran's possible obligation for a deficiency. Therefore, the administrative hearing to be held hereunder shall include an explicit finding on this subject.

The determination of which, if any, of the plaintiff class received conforming notice of the pending foreclosure by VA Form 26–8762 or by Whitney letter, or had actual notice of foreclosure, depends on each individual plaintiff's facts and circumstances. The Court directs that counsel for the parties jointly prepare a notice to the members of the class advising them of this decision. The notice shall inform them that in the event they have not been provided notice in accordance with this Order, they may be entitled to remission

of any debts incurred or possible return of any funds of which they have been deprived. Counsel are also directed to prepare a form on which the plaintiffs may submit their claim. Review of plaintiffs' submissions and relief in accordance with this Order shall be made through the administrative apparatus of the VA. During this review process, the burden shall be on the VA to demonstrate that it has complied with due process as set forth herein.

### V. *Redefinition of the Class*

In view of the Eighth Circuit's opinion, and the Court's ruling herein, the definition of the class shall be amended to limit the class to those veterans to whom the VA did not attempt to send VA Form 26–8762, a Whitney letter, or equivalent notice, and who did not otherwise receive actual prior notice of the foreclosure sale.[11]

### VI. *Award of Interest*

Plaintiffs argue that they are entitled to pre-judgment and post-judgment interest on any monies recovered from the VA. The government opposes any award of pre-judgment interest.

With respect to pre-judgment interest, the Supreme Court has held that, "apart from constitutional requirements, in the absence of specific provision by contract or statute, or 'express consent ... by Congress,' interest does not run on a claim against the United States." *Library of Congress v. Shaw*, 478 U.S. 310, 317, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986) (internal citations omitted). The "constitutional requirement" arises in a Fifth Amendment taking where a

court might determine that "just compensation" includes reasonable interest. *Id.* at 317, n. 5, 106 S.Ct. at 2963, n. 5 (citing *Smyth v. United States*, 302 U.S. 329, 353–54, 58 S.Ct. 248, 252, 82 L.Ed. 294 (1937); *Albrecht v. United States*, 329 U.S. 599, 605, 67 S.Ct. 606, 609, 91 L.Ed. 532 (1947)). An award of interest may also be appropriate where the government has "cast off the cloak of sovereignty and assumed the status of a private commercial enterprise." *Id.* (citing *Standard Oil Co. of New Jersey v. United States*, 267 U.S. 76, 79, 45 S.Ct. 211, 212, 69 L.Ed. 519 (1925)); *Loeffler v. United States,* 486 U.S. 549, 554–56, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988) ("By launching 'the Postal Service into the commercial world,' and including a sue and be sued clause in its charter," Congress waived the Postal Service's immunity from interest awards); *National Home for Disabled Volunteer Soldiers v. Parrish*, 229 U.S. 494, 33 S.Ct. 944, 57 L.Ed. 1296 (1913) (upheld interest award in favor of building contractor against eleemosynary agency caring for veterans).

■ First, plaintiffs maintain that the Fifth Amendment exception to the no-interest rule applies. In this regard, they are incorrect. The Fifth Amendment exception has been applied only to eminent domain cases, where the theory of recovery is that property was taken without "just compensation." *See Smyth*, 302 U.S. at 353, 58 S.Ct. at 252; *Albrecht*, 329 U.S. at 605, 67 S.Ct. at 609; *Shoshone Tribe of Indians v. United States*, 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360 (1937). Plaintiffs do not rely on the

---

**11.** Accordingly, the revised definition of the class reads:

All individuals eligible for home loan guarantees or insurance proceeds pursuant to Title 38, United States Code, Chapter 37, against whom the United States or its agencies have asserted, or will assert, a claim pursuant to 38 CFR § 36.4323(e) or indemnity agreement, which claim has been or will be generated because of a claim paid by the United States to a lender who submitted such claims to the United States because of a mortgage foreclosure conducted in the State of Minnesota subject to the anti-deficiency provisions of Minnesota law including, but not limited to, Minnesota Statutes § 582.30, or former § 580.23 subd. 1, but excluding any claims based upon foreclosure of mortgages closed

after December 31, 1989, *where the VA did not attempt to send such veteran VA Form 26–8762, the Whitney letter, or equivalent notice, and who did not otherwise receive actual prior notice of the foreclosure sale.* This class will include the following subclasses:

SUBCLASS # 1: Those individuals, included in the above class, against whom a final judgment has been entered in a court of law on such claim.

SUBCLASS # 2: Those individuals, included in the above class, from whom the VA has collected monies based upon a claim under 38 CFR 36.4323(e) or written indemnity agreement, by way of voluntary payment, offset of benefits, wages, tax refunds, or other collection efforts.

proposition that property was taken without "just compensation"; rather, they claim that they were deprived of property without due process. Therefore, the Fifth Amendment exception to the no-interest rule is inapplicable here.

■ Plaintiffs, however, quite properly invoke the "commercial activity" exception recognized in *Loeffler* and *National Home for Disabled Volunteer Soldiers v. Parrish.* It is disingenuous for the VA to deny that their home loan guarantees are not a commercial activity. The VA fully expects that both the veteran and a commercial lender will rely on the guaranty. This reliance is heightened when the loan guaranty is permitted to be transferred to any purchaser who assumes the VA loan. This transferability undermines any suggestion that the VA loan is personal to the veteran. The veteran, the mortgage lender, and any mortgage assumption successor all properly, and foreseeably, rely on this commercial activity. The Court, therefore, finds that the VA is liable for pre-judgment interest on those sums improperly taken from eligible veterans under the terms outlined in this Order. *Accord, New York Guardian Mortgagee Corp. v. Cleland,* 473 F.Supp. 422, 436 (S.D.N.Y.1979). Finally, plaintiffs are entitled to post-judgment interest, pursuant to 28 U.S.C. § 1961(a).

VII. *Conclusion*

For the reasons set forth above, and based on the files, records, and proceedings herein, IT IS ORDERED that:

1. The plaintiff class is redefined as set forth above.

2. From the date of this Order, the VA shall be entitled to seek indemnity only against those veterans to whom it provided notice in accordance with this Order.

3. The VA shall cease any collection activities against veterans to whom the VA failed to provide notice in accordance with this Order.

4. The VA shall remit to each class member who is entitled to recover pursuant to this Order, any amounts withheld from such class member, or paid to the VA by such class member, plus pre-judgment and post-judgment interest thereon.

5. Counsel shall submit to this Court for review a notice, in plain English, to the members of the class as set forth herein, on or before February 15, 1993.

6. The VA shall make available its administrative review channels in order to determine which class members are entitled to relief, as set forth herein.

7. The Court remands this matter to the magistrate to determine whether, and to what extent, the plaintiffs are entitled to attorneys' fees and costs.

8. Insofar as either party seeks relief other or different than is granted herein, such relief is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.